| 46 | 90 |
|---|---|
| 123 | 134 |
| 22a | 139 |
| 24a | 321 |
| 46 | 90 |
| 129 | 188 |
| 46 | 90 |
| 132 | 590 |
| 46 | 90 |
| 134 | 30 |
| 46 | 90 |
| 136 | 426 |
| 46 | 90 |
| 137 | 382 |
| 39a | 317 |
| 46 | 90 |
| 159 | 499 |
| 46 | 90 |
| 165 | 292 |
| 46 | 90 |
| 169 | 535 |
| 46 | 90 |
| 81a | 453 |
| 46 | 90 |
| 184 | 530 |
| 184 | 531 |
| 184 | 533 |
| 46 | 90 |
| 186 | 294 |

# JAMES HAMILTON

*v.*

# BENJAMIN F. QUIMBY *et al.*

1. FORMER ADJUDICATION. A former adjudication of the matter in controversy, is conclusive between the same parties in a subsequent proceeding upon the same matter, not only as to the matters actually determined, but as to every other thing, then within the knowledge of the complainant which might have been then set up as ground for relief and litigated in the first suit.

2. TRUST DEEDS—*note secured by—reduced to judgment does not affect the security.* Judgment taken upon a note secured by deed of trust, does not operate as a release of the security, so as to prevent a sale of the premises under it. The form of the debt is simply changed, and a court of equity will decree a sale of the premises to satisfy the judgment.

3. JUDICIAL SALES—*what acts of plaintiff imply fraud in proceedings sufficient to set aside a sale under an execution.* The fact that an execution is levied upon property of the judgment debtor, in a county different from that in which he resides, and where he would be unlikely to hear of such levy, and such property is sold, and at the time of such levy and sale the judgment debtor had property in the county where he resided, subject to the lien of such judgment, *implies* either, that the plaintiff knew that he could not enforce the judgment at home, or that he sought to obtain an unfair advantage of the judgment debtor; which conduct will not be sanctioned.

4. SAME. And in such case, where it appeared, that the judgment had been satisfied before execution issued, and that the defendant received no notice of the proceedings, the sale will be set aside, unless the rights of innocent purchasers have intervened.

5. SAME—*delay—when no bar to relief.* Nor will the fact, that the defendant has suffered considerable delay to occur, which is satisfactorily accounted for, bar his relief.

6. SAME—*when relief barred by defendant's laches.* But if he is cognizant of the levy of the writ, and of the sale under it, and fails to pay it, or redeem from the sale, such *laches* will ratify the sale.

7.—SAME—*for a grossly inadequate price—courts will scrutinize proceedings closely —to afford relief if possible.* Where a sale of lands has been effected under an execution, and for a price grossly inadequate, any conduct on the part of the plaintiff in the execution, indicating unfairness, will be seized upon to afford relief.

8. SAME—*concerning innocent purchasers—who are not.* A purchaser of land, sold under an execution, was informed by a person, of the rights of the defendant in the premises, prior to the sale, to which he replied that the plaintiff was good, and thereupon bid in the premises at a grossly inadequate price: *Held,* that he was chargeable with notice of the irregularities of such sale, and could not claim as an innocent purchaser, and assert such acquired title, against the defendant.

9. CHANCERY—*courts of—will not pass upon the validity of a tax title.* A court of equity will not determine the validity of a tax title. The solution of such questions belongs exclusively to courts of law.

APPEAL from the Circuit Court of Lake county, the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

The facts in this case are fully stated in the opinion.

Messrs. B. S. MORRIS and A. W. WINDETT, for the appellant.

Messrs. THOMPSON & BISHOP and BLODGETT, UPTON & WILLIAMS, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

The record in this case is voluminous and we have studied it with care, but shall content ourselves with giving but a short statement of the material facts, and the conclusions at which we have arrived. The bill filed by appellant seeks to impeach the title to two eighty acre tracts of land. It appears that in September, 1856, Benjamin F. Quimby & Co., loaned to appellant about $1,300, for which he executed his note for $1,378, due at sixty days. In November of the same year, they loaned him the further sum of about $3,200, for which he gave six notes for $600 each, due in six months. These notes were transferred to different persons; three of them to Dr. N. Bachelder. These notes were all secured by deeds of trust on real estate. When the notes last given fell due, they were not paid, and the property

by which they were secured was advertised for sale under the trust deed. At this time Quimby & Co. held the $1,378 note, and claimed about $100 for taxes and judgments, which they had paid to protect the securities they had taken.

In June, 1857, appellant sold eighty acres of land in Lake county to William Linton for $3,500, and received one thousand dollars of the purchase money in cash, and took notes for the remainder. This cash payment, by arrangement, was given to Quimby & Co., in satisfaction of the $1,378 note, and the claim for taxes and judgment paid by them to protect the security. Quimby & Co. at the same time purchased of appellant the Linton notes and gave him $2,140 for them, paying him three of the $600 notes with accrued interest, amounting in all to $1,890, and credited the balance of $250, on one of the three notes held by Bachelder. This left due on those notes a balance of $1,640, for which appellant gave his note to Bachelder, payable in 90 days, with a power of attorney to confess judgment, and also executed a deed of trust on seventy acres of land to secure its payment.

This note was not paid at maturity; the land was advertised for sale under the deed of trust; and appellant filed a bill in chancery to enjoin the sale of the land. In his bill he alleged that he had paid Quimby on the indebtedness before referred to, the sum of $4451,12, leaving a balance due Quimby & Co. of no more than $302,20; that $1,337,80 of the $1,640 note, to secure which the trust deed had been given was for usurious interest. Quimby & Co. answered, alleging that the note and trust deed were given to Bachelder, and that they belonged to him, and denied that appellant owed them. On a hearing, the court found that the note given to Bachelder, was given for a valuable consideration, and no portion was for usury, and dissolved the injunction and dismissed the bill. The land was then sold under the deed of trust, and bought by Bachelder for $800, and a judgment was confessed for $1,020, for the balance of the note.

Subsequently in April, 1858, Batchelder, holding the deed to the seventy acre tract of land, and the judgment, and having control of a tax title on the land, held by H. G. Chase, an arrangement was entered into by which Bachelder conveyed the land to appellant and satisfied the judgment, for which he paid $2,200. This arrangement was made through Quimby & Co., claiming to act as the agents of Bachelder. And they insist that this was a settlement, and closed up the whole transaction.

It also appears, that a judgment for costs had been rendered against appellant in the Cook county court of common pleas, in favor of Quimby & Co. On this judgment an execution and fee bill were issued on the 29th of May, 1858, to the Sheriff of Lake county, and was levied upon the E½, N. W. 26, 43 N., 12 E., which was sold by the Sheriff to Quimby and Law, in August of that year, for $44,56. This land was not redeemed, and in November, 1859, after the time for redemption had expired, the Sheriff executed a deed to the purchasers for the land. They, on the 26th of June, 1863, conveyed it to John Gemzenhauser for $200 as the consideration. He subsequently acquired a tax title on the north ten acres of the tract. The bill seeks to set aside these sales and to reinvest appellant with the title.

It is insisted by appellant, that when the settlement was made in which the Linton notes were transferred to Quimby & Co., they, and the money then paid, satisfied the whole of appellant's indebtedness, including the notes held by Bachelder, except some two or three hundred dollars, the amount of which was to be ascertained at a meeting of the parties which was to have taken place on the afternoon of the day of the settlement, but which never occurred; that a blank note, power of attorney and deed of trust were drawn up, to be filled with the true sum when they should again meet as agreed, which were left in Quimby's hands; that he filled them up with the sum of $1,600, payable to Bachelder, without authority or consent. Whilst the evidence may tend to establish this allegation, the

question seems to have been litigated and judicially determined in the decree, under the bill for an injunction. The court then found the note to have been legal and binding, and it must be regarded as *res adjudicata.*

When he filed his first bill, he must have known of this fraud, if it existed, and he should then have relied upon it, as it would undeniably have constituted a good defense, if it were true. A party cannot litigate and try a cause by parts, in different proceedings; he must bring his whole case before the court, and have it disposed of in one proceeding.

It is urged, that by reducing a part of the notes given by Linton, to a judgment, the trustee lost power to sell the land to pay the debt, and that Quimby and Law acquired no title by their purchase, and hence could convey none to Chase and Wilder by their deed for the land; that the note described in the deed of trust by being merged in the judgment operated to prevent a sale by the trustee. We are unable to perceive any force in this position. The land was conveyed as a security for the payment of the debt, and because it was reduced to a judgment, it could not operate as a satisfaction. It had simply changed the form, but nothing more. It was still a trust fund for its payment; the title was ▉▉ he trustee, and a court of equity would have compelled him to sell it for the satisfaction of the judgment. Nor do we see that appellant has any interest in this sale. Linton executed the notes and trust deed, and the sale was made under it, when Quimby and Law became the purchasers. Appellant has not shown that he has paid the notes or otherwise become entitled to the land then sold. If irregular, it is for Linton to complain, and not appellant. And as to the Linton tract, the decree of the court was correct.

Appellant insists that the fee bill upon which the eighty acre tract was levied and sold, was embraced in, and satisfied by, the settlement of the 24th of April, 1858, and that it was a gross fraud upon his rights, to sue out an execution on a judg-

ment for costs, which was satisfied, and sell property without notice to him; and that even if it was not satisfied, and an execution was authorized, it was a fraud to conceal the fact that they had issued it, and then to sell property worth certainly several thousand dollars, for comparatively so small a sum, and thus acquire the title. On the other hand, it is claimed that this tract has passed into the hands of innocent purchasers without notice, and that they are protected against a decree setting aside the sheriff's sale. But appellant claims they purchased with notice. Appellees also claim, that the sale was legal, and that they only exercised their statutory rights in acquiring the property, and that they should not be disturbed in their title to the land.

Was the judgment for costs satisfied by the settlement of the parties; or did appellant so understand it, and has he acted under a mistake and misapprehension so as to entitle him to relief? This settlement between the parties, made on the 24th of April, 1858, seems from the evidence and surrounding circumstances to have been in full of all their transactions. Witnesses state that it was; and this view is greatly strengthened, when it is seen that this small judgment was a lien on appellant's Chicago property, which he was then mortgaging to Beck to raise money to pay Quimby & Co. and Bachelder. And we may safely conclude that they so understood it, or why send an execution to a distant county, had they not known that the sale would have been successfully resisted, had it come to the knowledge of appellant or Beck. The very fact that it was issued to a county where appellant did not reside, and where he would not hear of it, except by a mere accident, when there was, if the evidence can be believed, property in the county of the parties and of the judgment, is out of the regular course of business, and implies, either that plaintiffs knew that they could not enforce the judgment at home, or that they sought to obtain an unfair

advantage of appellant; that they did not only seek to obtain their money, if it was due to them, but to practice a wrong by obtaining property of a large value for a very small sum. Such conduct is highly inequitable, and cannot receive the sanction of a court of justice.

Had the execution been issued to the county of the defendant, and had the officer performed his duty, by giving him notice that he had the writ, and then a sale had been made of so large an amount of property, for so small a sum, the sale ought not to have been set aside for mere inadequacy of price; but even then when there is such gross inadequacy, the court will seize upon anything indicating unfairness in the plaintiff, to afford relief. Although there is great discrepancy in the evidence as to the value of this property, still it carries conviction to the mind, that it was worth several thousand dollars; and that the price bid was grossly inadequate, being only $44.56, and when such a sale is made without notice to a defendant, and when it appears, that it was intended to conceal the facts from him, a court of equity will never hesitate to quicken the perceptions of the plaintiff to a sense of justice and right, by setting aside the sale, unless the rights of innocent purchasers have intervened. Nor will the mere fact, that some years may have elapsed, purge the transaction of its unfairness. Had appellant, however, known of the execution and the sale and failed to pay it, or redeem from the sale, it would be different, as he should be required to act with more promptness to obtain relief. In such a case, laches would ratify the sale, although hard in its operation.

There seems to be scarcely any doubt that this judgment was fully satisfied by the settlement. The receipt states that the ninety two hundred dollars had been paid by appellant in full of all demands. It also specifically names the judgment on which this execution was issued, as being embraced. But it is urged that only a copy of the receipt was produced and the existence of the original was not proved. Several witnesses

swear to having seen the original, and one of the number was the person who copied it, and one of the grand jurors who saw it when before that body. Another witness swears to its genuineness. We think this sufficiently accounts for the original, and proves its previous existence, loss and contents, and establishes the satisfaction of the judgment.

Did Gemzenhauser purchase this land with notice of the irregularities in the sheriff's sale? If so, then that sale should be set aside. Or even if he did purchase it without notice, if he took it as a volunteer, or has not paid the purchase money, he is not an innocent purchaser for value, and cannot be protected. He, in his answer, alleges that he purchased the property of Law, Quimby and Thompson, on the 16th of June, 1863, for the sum of two hundred dollars, and received a deed of conveyance for the same; that he purchased without notice of appellant's claim or rights in the premises. This answer is not under oath, nor do we find any evidence in regard to the purchase or the circumstances attending it.

It appears from appellant's evidence, that Gemzenhauser had notice that appellant claimed that the sheriff's sale was illegal, and would bring suit, if he purchased. He was so informed by McDonald and Linton before he purchased, and we think cannot shield himself from the effects of the illegal sale by the sheriff to his vendors. Again, the very fact that he only claims to have paid two hundred dollars, would seem to prove that he did not, nor did the parties to the transaction, regard the title as being valid. We cannot believe, in the absence of strong evidence, that property of such value would be sold, or could be purchased for that sum, if the title was regarded as good. Linton swears that when he informed Gemzenhauser of appellant's claim, he said that Quimby was good, and he seems to have then relied upon getting back his money in some other mode than out of the title to this land. If the eighty acres was incumbered, it was, no doubt, if the evidence can be regarded, worth several thousand dollars more than the

13—46TH ILL.

mortgage and all that Gemzenhauser gave for the land. Quimby, Law and Thompson, no doubt, knew that they could not hold it, and either made a fictitious conveyance to increase the difficulty of obtaining the title by appellant, or knowing that the claim had no foundation in law, were willing to dispose of it for a trifling portion of its value. But we think the evidence charges Gemzenhauser with notice, and that the sale on the execution should be set aside, and that he be enjoined from relying upon or asserting it as title to the land.

A careful examination of the record fails, however, to disclose any equitable grounds to decree that he surrender his tax deed to be canceled, or that he be enjoined from asserting it. We do not see that he acquired the tax title as the agent or trustee for appellant. No confidence or trust seems to have been reposed, nor was there any trust that has resulted in favor of appellant. A court of equity will not inquire into or determine whether a tax sale has been regular, or whether the sale is valid, merely to determine whether it is a cloud on the legal title, and to enjoin the holder from asserting it. It is the province of a court of law to try its validity. If valid, it constitutes a legal, and not an equitable right. If worthless, a complete defence may be made in that forum, in which we must leave the parties to litigate that title.

The decree of the court below is reversed and the cause remanded.

*Decree reversed.*