# JAMES McHANY

## *v.*

## EMILY A. SCHENK.

| 88 | 357 |
|----|-----|
| 126 | 484 |
| 88 | 357 |
| 129 | 44 |
| 88 | 357 |
| 144 | 247 |
| 88 | 357 |
| 44a | 492 |
| 88 | 357 |
| 148 | 220 |
| 88 | 357 |
| 157 | 254 |
| 46a | 171 |
| 88 | 357 |
| 166 | 197 |
| 88 | 357 |
| 70a | 444 |
| 88 | 35. |
| 180 | 464 |
| 180 | 567 |
| 180 | 574 |
| 88 | 357 |
| 90a | 8133 |
| 88 | 357 |
| 184 | 529 |
| 88 | 357 |
| f94a | 7117 |

1. SUBROGATION—*of judgment lien to purchaser.* A person purchasing land at sheriff's sale under execution, and thus satisfying the judgment, is entitled, in equity, either to the land or to realize the money so paid, with interest, from the sale, and if such sale is set aside for an informality, as, selling the land *en masse,* he will be subrogated to the lien of the judgment, and the rights of the judgment creditor under the same.

2. JUDGMENT LIEN—*setting aside sale, revives lien as against intervening judgment.* Where a sheriff's deed and a sale of lands under execution are set aside for irregularity in the sale, and the lands ordered to be sold for the benefit of the purchaser, the original lien of the judgment will be continued in force even as against the lien of an intervening judgment.

3. SAME—*purchase subject to.* A purchaser of land acquiring his title after a judgment against his grantor has become a lien on real estate takes subject to such lien, and a subsequent sale of the land under execution, if not redeemed from, will pass the title of the judgment debtor.

4. JUDICIAL SALE *en masse is not void.* The sale of lands, capable of division, *en masse,* by a sheriff, under execution, is not void, but merely voidable, and is binding on all parties until set aside, and if set aside in equity, the court should protect the rights of the purchaser by enforcing the lien of the judgment in his favor, even as against intervening liens, and a subsequent sale under such lien will pass the title of the judgment debtor.

5. SAME—*inadequacy of price.* When all the requirements of a decree for the sale of land are observed, a court of equity will not interfere with the rights of the purchaser in the absence of fraud, or something rendering it inequitable in holding and enforcing them. Mere inadequacy of price, where there is doubt as to the acquisition of title, and a prospect of litigation, will not invalidate the sale.

6. SAME—*approval of sale is sufficient, without approval of deed.* Where the sheriff, as a special master, makes sale of lands under a decree, and his report of the sale is approved by the court, and he ordered to make a deed to the purchaser, which is reported, but no order made approving the making of the deed, the sale and conveyance can not be attacked collaterally for mere inadequacy of price. Approving the sale makes the officer's act that of the court, and no order confirming the report of deed is necessary.

7. JUDGMENT—*not satisfied by assignment.* Where a person pays a judgment creditor the amount of his judgment against another, and takes an assign-

ment, while the creditor is satisfied, the judgment is not, and the assignee may enforce its collection by process in the name of the judgment creditor.

8. Agency—*powers of agent.* Authority in an agent to receive and receipt for money due the principal gives no power to release or exchange the security for the balance of the debt.

9. Mortgage—*sale under power by agent of person to sell.* A sale made by the agent or attorney of a person entrusted with the execution of the power of sale in a sale mortgage, is not void, but voidable only by the person conferring the power. The maker of the power alone can question the sale for such irregularity—a creditor of him can not.*

10. Sale under power—*waiver of right to avoid by laches.* A sale of land under a power in a mortgage, by an agent of the mortgagee, can not be set aside after an unreasonable delay on the part of the mortgagor unexplained. A delay of over four years in filing a bill to avoid the sale, is fatal to relief in equity. Such delay is a waiver of objection to the irregularity.

11. Purchaser—*without notice of equity, protected.* An innocent purchaser of land without notice of any irregularity in the sale to his grantor under a power in a mortgage, will be protected in his title against an equitable right to avoid the sale as to his grantor, and notice will not be presumed.

Appeal from the Circuit Court of Tazewell county; the Hon. John Burns, Judge, presiding.

Messrs. Roberts & Green, and Messrs. Fullerton & Wallace, for the appellant.

Mr. B. S. Prettyman, and Mr. John B. Cohrs, for the appellee.

Mr. Justice Walker delivered the opinion of the Court:

In the month of November, 1867, appellee brought ejectment, in the circuit court of Mason county, against the tenant in possession, of appellant, to recover the quarter section of land in controversy. Appellant, as landlord, became a party to defend the suit. A trial was had, resulting in a judgment in favor of defendant, under the Statute of Limitations. The case was brought to this court, and the judgment reversed and

---

* Generally, as to sales made by others than the one appointed in the deed. See *McPherson* v. *Sanborn et al. ante,* 150, and note.

the cause remanded. Thereupon, appellant filed a bill to enjoin the prosecution of the suit in ejectment, which, on a hearing, was decided in favor of appellee, and appellant seeks a reversal of that decree.

It appears that, in the year 1856, one William Trent was owner in fee of the land in dispute. On the 6th day of May of that year, one Pratt recovered a judgment against Trent, in the Mason circuit court, which became a lien upon the land. On this judgment an execution issued on the 20th of May, 1856, and was levied on this and other lands, which were sold under the execution on the 26th day of the following July, and were purchased by George N. Walker, and a certificate of purchase was issued to him therefor, who, after the time for redemption had expired, in 1857, received a sheriff's deed for the land.

At the April term, 1859, of the Mason circuit court, Goodrich, Willard & Co., as mortgagees of Trent, filed their bill to set aside the sheriff's sale to Walker, for the alleged reason that the lands had been sold en masse. The sale was set aside and the judgment revived, and ordering the lands, with others, be sold to satisfy it.

On 23d of March, 1861, execution was issued and levied on these and other lands, which were sold on the 1st of May following, and B. S. Prettyman became the purchaser of the land in controversy, and received a certificate of purchase, which he afterwards assigned to W. Don Maus, and the time for redemption having expired, on the 20th day of October, 1862, the sheriff executed to him a deed for the land.

On the 1st day of May, 1863, W. Don Maus conveyed the land to Sarah A. Prettyman, and she, on the 2d day of May, 1867, joining with her husband, conveyed the land to Emily A. Prettyman, now Emily A. Schenk.

On the 23d of April, 1857, B. M. Wilson & Co. recovered a judgment against Trent, for $2220.80, in the Mason circuit court. Trent appealed the case to this court, and one Richard Ritter became security on the appeal bond, and, at the Janu-

ary term, 1858, the appeal was dismissed and a *procedendo* was awarded. Various executions were issued on this judgment, and finally, on the 6th day of March, 1860, Prettyman became the purchaser of this land under one of them at a sheriff's sale, and he assigned the certificate of purchase to George Jackson, and the land not being redeemed, the sheriff executed a deed to Jackson, and, on the 15th day of July, 1861, he executed a mortgage to Ira Davenport, on the land, with a power of sale by the mortgagee on default in payment, to secure $1200, and, about the 12th of May, 1867, after the maturity of the notes, W. Don Maus, as the attorney of Davenport, the mortgagee, sold the land, and a son of Davenport became the purchaser, who conveyed it to Prettyman, who conveyed it to Emily A. Prettyman, appellee.

On the 18th day of April, 1858, Trent conveyed, by warranty deed, to McHany, and, soon after, he obtained possession. This deed was for only 120 acres of the quarter. When this conveyance was made by Trent, Walker had purchased the land, and held the sheriff's deed therefor, and Wilson & Co. had obtained their judgment, and it was a lien on any interest which Trent held in the land, which was afterwards sold under execution, conveyed by the sheriff, and eventually, by conveyances, was vested in appellee.

It is, however, claimed that the Wilson & Co. judgment was paid and satisfied before the sale was made under the execution thereon, and Prettyman was cognizant of the fact. It is also claimed that, as the sale under the Davenport mortgage was made by W. Don Maus, the attorney of Davenport, whilst the power in the mortgage to make sale was to the mortgagee, his heirs or assigns, and being a personal trust, it could not be delegated, and the sale was, therefore, unauthorized and void.

There is no doubt that Trent held the land in controversy free from all liens or incumbrances, on the 6th day of May, 1856, the date of the recovery by Pratt of his judgment against Trent, and it became a lien on this land, and it was sold under

execution to Walker, who paid for it, and although the money thus paid may have satisfied the judgment and the lien Pratt held under it, Walker unquestionably thereby acquired a lien on the land. Pratt's lien was, by the sale, and payment of the money, transferred, in equity, if not in law, to Walker. It would be highly inequitable and unjust to hold he had lost it, simply because of a mere informality in the sale, by an intervening lien, by a judgment obtained more than a year after Walker had obtained his sheriff's deed. The sale to him was not void, but merely voidable, and was binding on all parties until set aside. He was invited by the law to become a purchaser, and when he did so, and paid the amount due on Pratt's judgment, he thereby became entitled, in equity, either to have the land, or to realize his money thus paid, with interest, from its sale. He, at the very least, was subrogated to Pratt's lien and rights under the judgment. He is not shown to have been under the slightest obligation, either legally or equitably, to pay this debt for Trent, nor is he shown to have been under any moral, legal or equitable duty to Wilson & Co. to abstain from using the lien he had thus acquired, to realize either the land or his money.

When the sale was set aside, the court decreed the sale of the land to pay this money, and that could only be done because Walker held the deed to the land, and when set aside, his lien continuing from the time he paid his money under the purchase, the court, on every principle of equity and justice, was required to protect Walker's rights by enforcing his lien. The decree did not, nor could it, revive this lien, because it was still subsisting, but the decree did vacate the satisfaction of, and revive, the judgment, which then became a lien on other lands of Trent; and it may be, Wilson & Co.'s judgment, acquired after the satisfaction of Pratt's judgment, became a preferred lien on lands not purchased by Walker, to the lien of the judgment thus revived, but that is not the question before us, and is not determined. It would be unjust to hold that, when the deed was set aside, the judgment of Wilson &

Co. was let in and preferred to the older and certainly equally just lien of Walker. This can not be sanctioned by equity.

The lien not only existed, but it attached to and passed with the land, and when sold under the decree, the sale only effectuated and rendered the lien available to put Walker in possession of his money. By that sale, to enforce the lien, the title passed to the purchaser, as the land was not redeemed. Had Wilson & Co. desired, they might, no doubt, have used their judgment to have redeemed the land from the sale under the decree, and thus have removed the prior lien, and have rendered their judgment availing, if the land was worth more than was bid under the decree. But they failed to do this, and thus permitted the title to the land to pass to Prettyman, assignee of the certificate of purchase, and from him to appellee, thus vesting in her this title.

It is, however, urged that Prettyman purchased at the sheriff's sale under the decree, for but a trifling and only a nominal sum, and therefore there is no equity in giving force to the title thus derived. In answer, it would, perhaps, only be necessary to say that the requirements of the decree in making the sale have been observed, and equity will never control legal rights thus acquired, unless there is fraud or something inequitable in holding and enforcing them.

Again, this purchase was evidently made under the presumption that the Wilson & Co. judgment had been let in ahead of the Pratt judgment, and that the conflicting claims would lead to litigation, as they have done.

A person purchasing land under such circumstances, could not be expected to pay a full or even a considerable portion of the value of the land. He would, of course, take into account the probable litigation that would be necessary to settle his legal rights growing out of such a purchase, and bid accordingly. It might have been the officer should have adjourned the sale, and endeavored thus to procure higher bids, but he was not required by the court to do so, and, in the absence of fraud and collusion, that could not invalidate the

sale. The requirements of the decree having been performed, the deed to Maus, as assignee of Prettyman, passed title to the land.

Again, the sheriff who was ordered by the decree to make the sale, after he had done so, reported the sale to the court, and the price bid for each tract separately, and the report of the sale thus made was fully approved, ratified and confirmed by a decretal order of the court, as to this quarter and other lands. The deed to Maus, as assignee of Prettyman, was reported to the court, but we find no order in the record that it was approved, but this is not material, as the sale was, and the officer ordered to execute a deed to the holder of the certificate. Thus we see the sheriff, acting as the master of the court, and to carry into effect its decree, and whose acts were adopted by the court, and made its own, was not only justified, but he was required to execute the deed. The sale and the deed must, therefore, be regarded as the act of the court, and the decretal order has never been vacated, and can not be attacked collaterally for mere inadequacy of price bid at that sale.

We now come to consider the sale under the Wilson judgment, and whether appellee took title under it. Appellee seems to have succeeded to and to hold any title which may have been conveyed by a sale under an execution on the Wilson judgment. That judgment was a lien on all of Trent's lands in Mason county when he conveyed to appellant, and he certainly took subject to that lien, and he has never extinguished or in any manner removed it. It then follows, that whatever interest, if any, which Trent conveyed to appellant, was sold under the Wilson execution, and was conveyed to Jackson, the assignee of Prettyman. So the title manifestly passed into Jackson, and out of appellant. Whether it remains in Jackson or his assignee, or has passed from him by a sale under the Davenport mortgage or not, it has passed from appellant by that sale.

It is, however, claimed, that the Wilson judgment was paid

and satisfied by Prettyman. If so, it does not appear from the evidence. It, however, does appear that Prettyman purchased and took an assignment of it, through Goudy, Wilson's attorney, and it is not shown that Prettyman, in doing so, used appellant's means, or in anywise acted for him, or that he was required, in morals or law, to do so, or has ever agreed to convey him the title. Counsel are mistaken in supposing that when a person pays a judgment creditor the amount of his judgment against another, and takes an assignment, the judgment is thereby satisfied. The judgment creditor is satisfied, but not the judgment. It still remains in full force against the debtor, and beneficially in favor of the purchaser, and he may use the process of the law, in the name of the judgment creditor, to obtain satisfaction.

The title thus passed into Jackson, and he afterwards mortgaged it to Davenport, to secure the payment of $1200. Appellant claims that he paid $1000 of this amount, and John Davenport was to look to Prettyman and Trent for the balance, and having received a special warranty deed for the land from Jackson, covenanting against his own acts except the Davenport mortgage, which the deed states appellant was to pay, he claims he thereby became invested with the title derived under the Wilson judgment. On the other hand it is claimed, he never paid the amount of the mortgage, and it was sold and bought in by the son of Davenport, and that appellant, by failing to redeem from the mortgage, lost the equity of redemption conveyed to him by Jackson.

Upon examining the evidence, we are satisfied that it fails to prove that Davenport agreed to look to Prettyman and Trent for all over $1000. On the contrary, it is denied by John Davenport, Prettyman and Trent, and it is not so stated in the receipt given for the payment of $1000, but it states that they are to pay the balance of the debt before Davenport gave up the papers. The receipt states that the money paid was to apply on Jackson's debt, and it is signed by John Davenport, whilst the notes and mortgage were to Ira Daven-

port, and there is nothing to show that John had any power to release Jackson or appellant for the mortgagee. But he testifies he had no such power. Unless he had authority, and we find proof of none, even if intended as a release, the creditor would not have been bound by it. John may have had power to receive and receipt for money paid, and yet have had no power to release or exchange the security for the balance of the debt, and we must presume he had not, as his testimony is not overcome.

But it is insisted, that the power in the mortgage was not pursued in making a sale under it; that it authorized Davenport, the mortgagee, his heirs or assigns, only, to make the sale, whilst it was made by his attorney, reported to him, and he executed the conveyance to his son, as the purchaser. Maus testifies he was authorized to make the sale, and gave the requisite notice—that he acted under the direction of the mortgagee, and as his attorney. A sale made by the agent or attorney of the person intrusted with the execution of the power is not void, but voidable only by the person conferring the power. These irregularities may be waived, and will be so held unless the mortgagor shall, within a reasonable time, take the necessary steps to avoid the sale. He can not lie by an unreasonable time, and then ask relief. He must act promptly. In the case of *Bush* v. *Sherman*, 80 Ill. 160, it was held, that a delay of more than four years in filing a bill was too late, and in that case the mortgagor was, a large portion of the time, in the rebel lines, when there was no intercourse between the two sections of the Union. Here there was over four years intervening between the sale and the filing of the bill, and appellant had actual notice that the sale would be made, and both actual and constructive notice that it had been made, and he was in the county where the land was situated, and has not given any equitable excuse or explanation for the delay. See *Munn* v. *Burges*, 70 Ill. 604.

In a sale like the present, it has been held that only the debtor can question the irregularity; that creditors have no

such power; that it is personal, and like any other irregularity may be waived by the grantor. But even if appellant, as the grantee of the land subject to this mortgage, had the right to insist upon the mere irregularity, still he did not act in time, and has waived the right. Nor has he shown, as charged, that there was a conspiracy between Prettyman, Maus and Davenport to make the sale fraudulently and to his injury. On the contrary, he was cognizant of the time, place and purpose of the sale. He was personally informed of the facts, and declined to act. Maus testifies that Davenport instructed him, in writing, to make the sale, and Prettyman denies all fraud and combination, and we think the proof wholly fails to establish the charge.

Again, it is held that innocent purchasers, without notice, are not affected by irregularities of this kind. *Gunnell* v. *Cockerill*, 79 Ill. 79. In this case, Prettyman purchased of the grantee who purchased at the foreclosure sale. The deed from the trustee to the purchaser contained the necessary recitals to show a compliance with the power, and if Prettyman was not chargeable with notice of the irregularity, then he is protected against it. The form of the notice of the sale, for aught that appears, may have stated that the trustee would sell in person, and if so, we will not presume that Prettyman knew the fact. So we are of opinion appellee has shown that she acquired the title that was transferred by sale under the Wilson judgment, and that the Davenport sale cut off appellant's equity of redemption acquired from Jackson. If it had not been cut off, he would be required to redeem before relief would be granted against that sale. He makes no offer of the kind.

The evidence fails to show seven years of uninterrupted possession by appellant or his tenants, and hence the bar of the statute can not be invoked.

The evidence is voluminous, so much so that we find it impracticable and unimportant to discuss it all in detail, but content ourselves with announcing conclusions reached from

reading it. We have discussed the evidence of appellee's title derived from the Pratt judgment, not because it was properly heard under appellee's pleadings, but because, had it been the only title shown by her, we should have reversed and remanded the cause, with leave to amend, so as to have rendered the evidence pertinent to justify the relief.

We are, after a full examination of the case, of opinion that complainant has failed to show himself entitled to the relief sought, and the decree is affirmed.

*Decree affirmed.*