# W. A. McGillis et al.
## v.
## Austin Willis.

*Drainage — District Commissioners — Action against for Damages Resulting from the Building of a Dam*—Res Adjudicata—Quasi *Public Corporation.*

1.  A drainage district is a public, involuntary, *quasi* corporation, and in the absence of special enactment is not liable for the wrongful and unlawful acts of its agents done in the execution of corporate duties and powers.

2.  Where the drainage commissioners merely acted under the order of the County Court in letting the contract for the work complained of and had no immediate supervision of its execution, they are not personally liable for injuries resulting from the prosecution of the work.

3.  In an action brought to recover damages for the overflow of plaintiff's land, resulting from the construction of a dam, where it clearly appeared that the erection of the dam was necessary to the feasible and economical

prosecution of the work of the drainage district, it is *held:* That the plaintiff's claim for damages was, or might have been, passed upon in the assessment of damages in the drainage proceedings, and that the matter was *res adjudicata.*

[Opinion filed August 3, 1891.]

APPEAL from the Circuit Court of Lee County; the Hon. JOHN D. CRABTREE, Judge, presiding.

Messrs. J. E. LEWIS and A. C. BARDWELL, for appellants.

The injury complained of must be presumed to have been taken into account by the jury in assessing damages and benefits.    Doyle v. Baughman, 24 Ill. App. 614.

Statutory assessment of compensation will cover all consequential damages occasioned by the construction of the work, except such as may result from negligent or improper construction, and for which action at law will lie.    Cooley, Const. Lim., 712 (4th Ed.).

Assessment of damages in condemnation proceedings embraces all past, present and future damages which the improvement may reasonably 'produce.    C. & E. I. R. R. Co. v. Loeb; 118 Ill. 213; 1 Sutherland on Damages, 191; Trenton Water Power Co. v. Chambers, 13 N. J. Eq. 199.

The final award in condemnation proceedings is a bar to an action for any injury which the appraisers could have legally estimated, irrespective of their action upon claims for injury, or even their knowledge or ignorance of its existence.    They are conclusively presumed to have performed their duty, except in a direct proceeding to set aside the award or on appeal.    Pierce on Railroads, 177, citing numerous authorities.

In assessing damages for lands taken for the construction of a canal or reservoir therein, injuries to the residue of such lands arising from seepage or leakage should be anticipated, and damages for the same should be included in the original assessment, and no subsequent recovery for such injuries will be allowed, unless negligence or unskillfulness be shown. Denver Irrigation & Water Co. v. Middaugh, 12 Colo. 434 (21 Pacific Rep'r, 565).

In condemnation proceedings evidence is competent tending to show the mode of constructing the work and the probable manner of its use.   Mix v. B. L. & M. R. R. Co., 67 Ill. 319; Suver v. Chicago, S. Fe & C. R. R. Co., 123 Ill. 297; Jacksonville & S. R. R. Co. v. Kidder, 21 Ill. 131.

And plans must be adhered to.   Peoria & R. I. R. R. Co. v. Birkett, 62 Ill. 332; Pierce on Railroads, 229; ·Chicago, S. Fe & Col. R. R. Co. v. Phelps, 125 Ill. 489.

And the jury may take into account injury likely to be done by blasting.   Whitehouse v. Androscoggin R. R. Co., 52 Me. 208.

The proposition hardly needs to be mentioned that assessment of jury unappealed from is conclusive.   People v. Meyers, 124 Ill. 95.

Where that which constitutes the actionable wrong is permitted on public grounds, but on condition that compensation be made, and the statute provides an adequate remedy whereby the party injured may obtain redress, the inference that this was intended to be the sole remedy must generally be conclusive.   So held in many cases where land has been taken for public use under eminent domain law.   Cooley on Torts, 652; Dodge v. Commissioners, 3 Met. 380; Pierce on Railroads, 177.

This may not be the law when the body authorized to institute proceedings fails to do so, but where the corporation, by following. the statute, ·tenders to the land owner a complete remedy, we insist he can not again have his day in court for anything but the negligent doing of the work.

By the " Levee Act" commissioners are expressly given full power to do all necessary work, including erection of dams, but if the cost of the work will exceed $500, the work must be let by contract.   (Sec. 36.)   It would seem that this contemplates that the contractors shall succeed to the powers of the commissioners in these particulars.

The drainage district is not liable for the injury complained of.

It is familiar law that " unless made so by express enactment, counties, townships, school districts and road districts

are not liable to persons injured by their agents in the execution of corporate duties or powers." Symonds v. Clay County, 71 Ill. 357.

Drainage districts are classed with these bodies in not being required to give bond on appeal. Commissioners .v. Kelsey, 120 Ill. 482.

Drainage districts are to be regarded as mere public, involuntary *quasi* corporations. They have no means of raising funds to pay damages, and their liability for the acts of officers is no greater than that of towns, road districts, etc. Elmore v. Drainage Com'rs, 32 Ill. App. 123; affirmed in Supreme Court and reported in 135 Ill. 269.

Messrs. MORRISON & WOOSTER, for appellee.

The case of Doyle v. Baughman, 24 Ill. App. 614, cited by counsel, throws no light on this case. It can hardly be denied that a jury in assessing damages would take into account the fact that dirt taken from the ditch must be deposited along its sides, and such damages must have been taken into account by the condemnation jury.

All other cases cited by counsel recite only the well known rule of law that such damages as naturally and probably flow from the construction of the proposed work must be taken into account by the condemnation jury.

In Hiram Jones v. C. & Iowa R. R. Co., 68 Ill. 380, it is said : " The amount allowed should be sufficient to cover all the actual damages occasioned by reason of the construction of the road, for the land taken and for all physical injuries to the resident, * * * but nothing should be allowed for imaginary damages, or such remote or inappreciable damages as the imagination may conjure up, which may or may not occur in the future."

The above case is cited approvingly in L. S. & M. S. Ry. v. C. & W. I. R. R., 100 Ill. 30; C. B. & N. Ry. Co. v. Bowman, 122 Ill. 595.

The commissioners or jury may take into consideration all incidental loss * * * and all damage that may be known or reasonably expected to result from the construction and

operation of the work.    3 Sutherland on Damages, 438; Missouri R. R. Co. v. Haines, 10 Kas. 439; Redfield on R'ys, 6th Ed. 304.

Only such damages as may be reasonably expected to flow from the construction and operation of the proposed work are to be taken into account by a condemnation jury.   James Mix v. LaFayette, B. & Miss. R. R. Co.; 67 Ill. 319; C. & A. Ry. Co. et al. v. S. & N. W. R. R. Co., 67 Ill. 142; Carman v. S. & I. Ry. Co., 4 Ohio St. 399.

HARKER, J.   In the year 1887 Inlet Swamp Drainage District was organized under the drainage and levee act, approved May 29, 1879, for the purpose of draining and reclaiming some thirty thousand acres of swamp land in Lee County.    All statutory requirements as to fixing boundaries, locating ditches, and assessing damages and benefits to the lands of the district were performed.    The drainage commissioners contracted the work of ditching as authorized by statute.    The natural outlet for the district was Inlet Creek, which was by the plans and order of the County Court made the main ditch.    In order to float the dredge boats used for removing the dirt and rock to the depth required, the contractors in April, 1888, constructed a dam across this stream about one mile below appellee's lands in such manner as to back up the water and cause their overflow.    With the exception of an occasional opening to let out the water the dam remained until the month of August following, when it was removed.    By reason of the construction of the dam and the consequent overflow of water the appellee claimed that large portions of his land had been rendered unfruitful to him that year, and brought his action on the case against the drainage district, the drainage commissioners and contractors.    A trial resulted in a verdict and a judgment against all the defendants for $263.33.    Appellee based his claim for damages upon the "wrongful" act of constructing and maintaining the dam. A drainage district is not liable for such injury.   It is a public, involuntary, *quasi* corporation, and in the absence of express enactment, not responsible for the wrongful and unlaw-

ful acts of its agents done in the execution of corporate duties or powers.    Cooley's Const. Lim., 247; Elmore v. Drainage Com'rs, 135 Ill. 269.

The verdict and judgment against the commissioners personally were unwarranted by the evidence.    Acting under an order of the County Court they merely let the contract for the work.    They had no immediate supervision of the dam. They took no part in its construction.    If contractors in the performance of drainage work adopt an unlawful method, and one resulting in injury to an individual, his remedy is against the contractors alone, unless it can be shown that the commissioners advised or encouraged such unlawful method.

The unwarranted verdict and judgment against the drainage district and the commissioners personally are sufficient grounds for reversal; but we are also of the opinion that appellee has no legal cause of action against the contractors. Four hundred and eighty acres of his land (including the land overflowed) were within the district.    It appears from the evidence that a jury, as authorized by law, assessed the damages and benefits that would result to the land from the drainage work.    Appellee appeared as an objector on the confirmation of the assessment, and was heard or could have been heard as to such damages as would naturally and probably arise in a practical construction of the work.    The evidence in this case clearly demonstrates that the erection of the dam was necessary to a feasible and economical prosecution of the work.    Immediately and for a long distance above the dam, the plans required the removal of dirt and the blasting and removal of rock several feet in depth and several feet in width for the "main ditch."    To carry the machinery for drilling and removing the rock it was necessary to have the dredge boats floated.    This could only be done by the construction of a dam.    If the erection of the dam was necessary, then it must be presumed that when the jury in the drainage proceedings viewed the land for the purpose of assessing benefits and damages, they considered whether such a dam and the consequent backing up of the water would damage appellee's land, and if so, fixed the amount.    If, as a

matter of fact,.the jury did not consider such damages, it was the privilege of appellee when he appeared as an objector to offer evidence in every detail shown by the profiles and plats, and demonstrate the effect, and have the damages allowed him. He has had "his day in court" as respects such damages.

The principle of *res adjudicata* embraces not only what damages were actually determined in the former proceedings, but also such as were properly involved and might have been determined. Freeman on Judgments, 272; Rogers v. Higgins, 57 Ill. 244; Stockton v. Ford, 18 How. 418; Hamilton v. Quimby, 46 Ill. 90; Ruegger v. I. & St. L. R. R. Co., 103 Ill. 456.

In this view of the case the judgment must be reversed and not remanded.

*Judgment reversed.*