FRANK R. HENDERSON et al.

v.

MILTON HARNESS.

*Opinion filed February 19, 1900—Rehearing denied April 6, 1900.*

1. PRACTICE—*chancellor may permit amendments where cause is remanded without specific directions.* Where a cause is remanded without specific directions and for such further proceedings as to law and justice shall appertain, the chancellor may permit amendments to the bill which might have been made prior to the hearing, and may allow the filing of any additional pleading which could have been previously filed.

2. PLEADING—*bill in chancery may be framed with a double aspect.* A bill in chancery may be framed with a double aspect and with a prayer for alternative relief; and this is true although such aspects are inconsistent, if each alternative case alleged would entitle the complainant to relief.

3. SAME—*bill may seek a cancellation of sale or redemption therefrom.* When the rights of third parties have intervened and the judgment debtor has been induced not to redeem by false representations of the purchaser, a bill in equity will lie to impeach the sale, or for a decree allowing redemption if the sale is upheld.

4. LACHES—*when laches will not be imputed—general rule.* Laches will not, as a general rule, be imputed to one in peaceable possession of land, for delay in resorting to a court of equity to establish his legal right or title thereto.

5. SAME—*when right to ask for redemption is not lost by delay.* The right to file a supplemental bill to redeem from an execution sale is not lost by delaying until after the sale sought to be set aside by the original bill has been upheld by the Supreme Court, where the complainant was induced to refrain from asking redemption because of promises by the purchaser to allow redemption if the sale was upheld, which he refused to keep after the decision.

6. EQUITY—*when chancellor need not re-refer cause to master to report conclusions of fact.* The chancellor may refuse to re-refer the cause to the master to report conclusions of fact if he hears and considers all the testimony taken before the master, since he may draw his own conclusions as to the facts established.

7. EVIDENCE—*what competent in estimating value of life estate.* To aid in determining the value of a life estate, standard mortality tables and computations of experts based upon such tables are admissible in evidence, in connection with testimony as to age and health of the life tenant and the rental and salable value of the land.

8. JUDICIAL SALES—*course to be pursued where several tracts are levied upon.* Where several tracts of land are levied upon it is the duty of the officer to offer each tract separately, and if no bids are received to add another tract, and so on until the tracts are offered *en masse,* when he may sell upon receiving a reasonable bid.

9. SAME—*gross inadequacy of price coupled with irregularities is ground for vacating sale.* Gross inadequacy of price paid for lands sold subject to redemption, coupled with the fact that the tracts are sold *en masse* without compliance with the statute, is ground for equitable interference to vacate the sale.

10. SAME—*when equity will grant redemption.* Where lands have been sold under execution for a grossly inadequate price, and the judgment debtor has been induced, by false representations and promises by the purchaser, to delay making redemption until the statutory period therefor has passed, equity will grant relief.

11. SAME—*when price paid upon execution sale is grossly inadequate.* The price paid upon an execution sale of a life estate is grossly inadequate where the amount paid is less than the value of the life tenant's interest in the use of the land for a single year.

APPEAL from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding.

F. R. HENDERSON, *pro se,* and E. E. DONNELLY, (WILLIAM E. HUGHES, of counsel,) for appellants.

ROWELL, NEVILLE & LINDLEY, for appellee.

TROWBRIDGE, FLEMING & BOHRER, for the intervening petitioner, Terrell.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This case was before this court at a former term. (*Henderson* v. *Harness,* 176 Ill. 302.) We there determined the interest in certain lands which vested in the appellee under the provisions of the will of his father, Isaac Harness, was subject to levy and sale under and by virtue of judgments against him; reversed a decree of the circuit court which gave a different construction to the said will, and remanded the cause "for such other and further proceedings as to law and justice shall appertain." The

cause was re-docketed in the circuit court of McLean county, whereupon appellants entered a motion that a final decree be rendered upon the judgment of this court. The appellee moved for permission to amend the bill and for leave to file a supplemental bill. The court denied the motion of appellants and granted those entered by the appellee. In these rulings the court did not fall into error, as appellants strenuously insist. The judgment entered by this court virtually expunged the decree of the circuit court, and the remanding order was so framed as to leave the cause, when re-instated in the circuit court, in the same condition as if no decision had been rendered in that court. The cause having been remanded without specific directions, and for such other and further proceedings as to equity should appertain, it was in the power of the chancellor to permit any amendments to be made to the bill which might properly have been made prior to the hearing of the cause, and to allow the filing of any other pleading which would have been permissible during the former pendency of the cause for trial. *Chickering* v. *Failes,* 29 Ill. 294; *Cable* v. *Ellis,* 120 id. 136; *Perry* v. *Burton,* 126 id. 599; *West* v. *Douglas,* 145 id. 164; *Rush* v. *Rush,* 170 id. 623.

In pursuance of the leave granted, the bill was so amended as to charge that in making the sales of the lands on the executions issued on the judgments in favor of Terrell and Oberkoetter & Sons, respectively, the requirements of section 12 of chapter 77 of the Revised Statutes, entitled "Judgments, decrees," etc., that lands shall be sold in separate tracts or lots, was not observed, but that the lands, consisting of different distinct tracts, were sold *en masse* and at grossly inadequate prices; that the complainant was induced, by fraudulent representations and promises made by the appellant Henderson, not to make redemption of the lands from the sales, and that after the time allowed for redemption had expired said Henderson refused to accept the redemption

money, in violation of such promises, etc. The prayer of the bill was also so amended as to pray appellee should be allowed to redeem from the said execution sales upon payment of the amount thereof and interest thereon from the date of said sales.

The relief sought by the case made by the bill as amended, namely, the vacation and cancellation of the sale made of the lands under the executions and redemption therefrom, was within the scope of the relief asked by the original bill. A motion to set aside a sale under execution only brings before the court the parties to the judgment under which the sale was made. If, as here, the rights of third parties have intervened, and the appellee can show, as is charged in his bill, that he was induced by the fraud of the appellant not to make redemption within the statutory period, a bill in equity will lie to impeach the sale or for a decree that he be allowed to redeem therefrom. (*Day* v. *Graham*, 1 Gilm. 435; *Jenkins* v. *Merriweather*, 109 Ill. 647; *Clark* v. *Glos*, 180 id. 556.) It would, therefore, have been entirely competent, in framing the original bill, to have presented to the court the contention that the interest of appellee in the lands devised to him by the will of his father was not such an interest as was subject to be seized and sold to satisfy executions against him, and also to attack the validity of the sales made under such executions on the ground set out in the amendments made to the bill. A bill in chancery may be framed with a double aspect, and the prayer thereof be in the alternative, that if the chancellor shall decide against the complainant in one view it shall grant him the relief in another. (Story's Eq. Pl. sec. 42; *Varick* v. *Smith*, 5 Paige's Ch. 137; *Rives* v. *Walthal*, 38 Ala. 329.) And this is true though the different aspects presented be not consistent each with the other, if each alternative case made by the allegations of the bill entitles complainant to the relief asked by the prayer. (Story's Eq. Pl. sec. 254; *Varick* v. *Smith*, *supra*.) As it

would have been entirely competent to have incorporated in the original bill all that is set forth in the amendments allowed to be made thereto, it was within the power of the court to permit the amendments to be made.

The appellee also filed a supplemental bill, which set forth, in substance, that about a month after the filing of the original bill, the appellant Frank R. Henderson told the appellee, in substance, that he was glad he had filed his bill to construe his father's will; that he would soon learn whether his sales were any good; that he had other cases or questions of like character and wanted a decision of the courts, and that, regardless of how the suit terminated, he did not want appellee's land, but would take his money when the suit was finally determined; that appellee then and there told him that his circumstances were such that he could not pay at that time, but that he intended to pay the judgments as soon as he possibly could, and that appellee relied upon the statement so made by the said Frank R. Henderson, and but for said statement would have redeemed from said sales; that during the fall of 1897 and the early spring of 1898 he paid off and settled all of his old indebtedness, amounting to more than $5000, except that owing to these defendants; that several months before the Supreme Court decided this case, complainant got money to pay off the defendants herein in the full amount of their judgments, interest and costs, and during the spring of 1898, long before this case was decided in the Supreme Court, complainant offered to pay to the said F. R. Henderson the amount of the said Terrell and Oberkoetter judgments, with interest and costs thereon, and complainant now offers to pay and bring into court the full amount of said judgments, interest and costs; that when he offered, in the spring of 1898, to pay said judgments, interest and costs, the said F. R. Henderson refused to accept the same, notwithstanding the statements he made shortly after the filing of the said original bill, and gave as a

reason for so refusing that he wanted the court to decide the question involved because of other cases in which he was interested.

A demurrer was filed to the supplemental bill, the grounds thereof being, that (1) under the order of reversal entered by this court the cause was not open for amendments or further pleadings; (2) because the matters therein sought to be litigated had been already determined and were *res judicata;* and (3) complainant was estopped from again litigating the same because complainant, by *laches*, had waived his right to the relief sought.

That the first of these grounds of demurrer was not tenable we have already seen. It is sufficient as to the second ground of demurrer to say, though other matters may be referred to historically, the issues to be litigated under the supplemental bill were only such as arose out of transactions and agreements alleged to have occurred or have been entered into subsequently to the filing of the original bill.

The court also correctly ruled appellee was not guilty of such *laches* as would operate as a bar in a court of equity. When the sales sought to be vacated were made, appellee was in possession of the lands struck off at such sales. He continued in peaceable possession thereafter, and had undisputed actual possession when the supplemental bill was filed. It is a general rule in equity, *laches* will not be imputed to one in peaceable possession of land for delay in resorting to a court of equity to establish his legal right or title thereto. (*Wilson* v. *Byers*, 77 Ill. 76; *Parker* v. *Shannon*, 137 id. 376; 12 Am. & Eng. Ency. of Law, p. 606.) We see nothing to prevent the operation of this general rule in this case. Aside from this, the allegations of the supplemental bill, which are to be accepted as true so far as the demurrer is concerned, are, the appellant Henderson had induced the appellee not to make redemption of the lands from the sales during the pendency of the cause on the original bill, assur-

ing him he (Henderson) desired judicial determination of the points involved in the original bill, and would, after the determination of such points, accept the amount necessary to redeem the lands from the sales without regard to what his rights might be declared to be by the final decision of the case, and the supplemental bill proceeded upon the theory the appellant Henderson, after the case as first presented had been decided by this court, refused to accept the money as in redemption of the land. The judgment of this court finally disposing of the points of law involved by the issue under the first bill, became effective December 14, 1898. The supplemental bill was filed January 10, 1899. There is, therefore, no unreasonable delay whereon to base an imputation of *laches*.

Answers to the amended and supplemental bills were filed, and by leave of the court appellant Henderson filed a cross-bill. The prayer of the cross-bill was, that upon final hearing the appellee should be required by decree of the court to deliver up possession of the premises to the complainant in the cross-bill, and that an accounting should be had and taken of the rents and profits of the land subsequent to the date of the sheriff's deeds made to the purchasers at the sale. Answer was filed to the cross-bill. By leave of the court, O. Terrell, plaintiff in one of the judgments under which one of the sales sought to be attacked by the appellee was made, filed an intervening petition, alleging, in substance, the appellant Henderson, while acting as attorney for the petitioner, had, in fraud of the rights of the petitioner, procured the title to the tract of land sold by the sheriff to satisfy the judgment in favor of petitioner, to be made to him, said Henderson, and praying that the petitioner should be subrogated to all the right and title in said tract of land so acquired by the said Henderson. Whether the court erred in overruling the demurrer presented by the appellant Henderson to this petition and requiring an answer to be made thereto need not be here considered, for the

reason the court, upon final hearing, dismissed the petition at the cost of the said Terrell.

The cause was referred to the master to take and report the proof and his conclusions as to the law and facts. The master made no report as to his conclusions upon questions of either law or fact relative to the allegations of the supplemental bill that the appellant Henderson had induced the appellee to refrain from making redemption from the sales. The master found, from the evidence, that four tracts of land were sold *en masse*, under the execution issued on the Oberkoetter judgment, for a gross sum of $541.56, and that the total value of complainant's interest or life estate in said tracts was $9642, and that two tracts of land in which appellee's life interest or estate was of the value of $3700, were sold *en masse*, by virtue of the execution issued on the Terrell judgment, for the sum of $356.33. Objections filed by appellants to the report of the master, among others that the master had not made any finding of facts on the issue that appellant Henderson had induced the appellee not to make redemption of the lands, as charged in the supplemental bill, were overruled. It is not important we should determine the correctness of the action of the court with reference to these objections, for the reason it appears from the record the chancellor heard and considered all the evidence taken before the master. That course having been pursued, it is only essential to know whether the evidence so heard by the court and preserved in the record is sufficent to justify and uphold the decree rendered by the court. The report of the master was but advisory to the court, and it was fully within the power of the chancellor to decline to re-refer the cause to the master, and to hear, as chancellor, all the testimony taken before the master, consider the same, and draw conclusions as to the facts thereby established and the law applicable thereto.

The court found, and recited in the decree, that all the material allegations of the amended and supplemental bills were true as therein stated, and recited other special findings of fact which are hereinafter referred to. The court decreed the appellee should be allowed to redeem the lands from the said execution sales, and ordered the clerk should pay over to appellant Henderson the sum of $1086, which the appellee had previously deposited with the clerk as a tender of the amount necessary to effect redemption, and that the execution sales and sheriff's certificates of sales, and deeds made thereunder, should be set aside, vacated and canceled and that the petition of said Terrell should be dismissed at his cost; that all costs accruing in the case prior to the re-docketing of the same after it was remanded by this court should be paid by the appellee; that the costs in the intervening petition should be paid by the petitioner, Terrell, and the remaining costs by the appellant Henderson. This is an appeal prosecuted by the appellants to reverse the decree, in which the petitioner, Terrell, has assigned cross-errors by leave of this court.

The court found, and recited in the decree, that two judgments had been rendered against the appellee,—one in favor of F. Oberkoetter & Sons and the other in favor of O. Terrell; that an execution was issued on each judgment, and levied, respectively, on the appellee's interest in the lands here involved; that by virtue of said levies said lands were exposed for sale on the 22d day of July, 1895; that under the execution issued on the Oberkoetter judgment four distinct tracts of land were exposed for sale; that said tracts were first offered for sale separately by the sheriff, and no bids being received for either of said tracts, all the tracts were offered for sale *en masse* and were struck off and sold in that manner. As to the truth of these findings there is no contention. Section 12 of chapter 77 of our statutes, entitled "Judgments, decrees," etc., (Hurd's Stat. 1899, p. 1049,) requires

that lands susceptible of division shall be sold in separate tracts or lots. The course to be pursued in making such sales has been pointed out on more than one occasion by this court. It is, where several tracts are levied on, the duty of the officer to offer each tract separately, and if one tract will not sell separately, to add another to it, and add a third tract if no bid can be had for two tracts, and so on, and in that manner the sheriff may, upon a reasonable bid, sell the whole *en masse.* But a sale *en masse* should not be made merely because bids can not be had for separate tracts when offered separately. (*Phelps* v. *Conover,* 25 Ill. 309; *Morris* v. *Robey,* 73 id. 462; *Douthett* v. *Kettle,* 104 id. 356.) A sale improperly made *en masse* is voidable. *McHany* v. *Schenck,* 88 Ill. 357.

It appeared from the findings recited in the decree, the lands so sold by virtue of the execution issued on the Oberkoetter judgment were improved farm lands, worth $100 per acre; that the annual rental value of each of two of the tracts was $160, and that the annual rental value of each of the other two tracts was $360, the total annual rental value being $1040; that the value of the life estate or interest of the appellee was $1483 in each of two of said tracts and $3338 in each of the other two of said tracts, making the total value of appellee's interest in all of the said four tracts $9642, and that the amount bid at said sale for the said four tracts *en masse* was $541.56. The value of appellee's interest in the said tracts was ascertained from testimony showing the annual rental value of the lands, their salable value, the age and health of the appellee, and the probable duration of his life according to the life tables compiled by Dr. Wigglesworth and the Portsmouth and Northampton life tables. The life tables so introduced in evidence are standard and recognized mortality tables. They were properly received in evidence. It was also competent to receive in evidence computations of experts based upon the tables, in connection with the other testimony touch-

ing upon the expectancy of life of the life tenant and the present value of his estate in the lands. (*City of Joliet* v. *Blower*, 155 Ill. 414; 5 Am. & Eng. Ency. of Law, cases cited p. 67.) Life tables are not the most satisfactory evidence. The average expectancy of life is proper, however, for consideration, as tending, in some degree at least, to indicate the probable continuation of the life of a particular individual. But the gross and glaring inadequacy of price is demonstrated in this instance by a comparison of the annual interest of the appellee in the lands and the amount of the bid. It appeared incontestably from the proof, the bid for all the lands sold under the Oberkoetter judgment was barely more than one-half of the income which would accrue to the holder of appellee's interest in the land in a single year. While mere inadequacy of price bid for lands sold subject to redemption may not, of itself, be ground for equitable interference, yet when the inadequacy is gross, and the land has been sold *en masse* in violation of the statute, equity will interfere to vacate the sale. (*Hamilton* v. *Quimby*, 46 Ill. 90; *Morris* v. *Robey, supra; Phelps* v. *Conover, supra; Davis* v. *Chicago Dock Co.* 129 Ill. 180; *Bradley* v. *Luce*, 99 id. 234; *Hobson* v. *McCambridge*, 130 id. 367; *Smith* v. *Huntoon*, 134 id. 24; *Douthett* v. *Kettle, supra.*) That the land was sold *en masse* and was not offered for sale in the manner required by the statute appeared affirmatively from the sheriff's report of the sale. The bidder at the sale was one of the plaintiffs in the judgment on which the execution issued. He was chargeable with notice of all irregularities in the manner and mode of making the sale. He conveyed by quit-claim deed to the appellant Henderson. The consideration expressed in the deed was "one dollar and other valuable consideration," but there is no proof in the record that any consideration was ever paid, and it is not and cannot be contended, in the face of the facts and circumstances appearing in the evidence, that the appellant Henderson was a *bona fide* purchaser for value

without notice. He but stood in the shoes of the pur-
chaser at the sale. *Smith* v. *Huntoon, supra; Hamilton* v.
*Quimby, supra; Roseman* v. *Miller*, 84 Ill. 297.

We do not assent to the view the sale made under
the execution under the Terrell judgment was of lands
*en masse* in violation of the statute. But one tract was
sold. It was the north half of the smallest governmental
subdivision of the north-west quarter of the section, viz.,
the north half of lot 2 of the north-west quarter of sec-
tion 31. It had not been in any manner further subdivided.
It was a separate lot or tract, within the meaning of the
provisions of said section 12 of chapter 77. It appeared,
however, from the evidence, the said tract was worth
$8000; that appellee's interest therein was worth $3600
and that the annual rental value thereof was $400. The
tract was struck off to the appellant Henderson for the
sum of $356.33, being less than the value of appellee's
interest in the use of the land for a single year. There
was, therefore, great inadequacy in the amount of the
bid, which, when considered in connection with the con-
duct of the appellant Henderson in the way of inducing
the appellee to refrain from making redemption from the
sale, hereinafter referred to, fully justified the decree of
the court requiring the appellant Henderson to accept
the sum tendered in court as in redemption of the tract
from the sale.

It appeared from the testimony of appellee and Wil-
liam Harness, which was strongly corroborated by that
of Alex. Rockwell and Frank Rockwell, that appellant
Henderson met appellee soon after the original bill had
been filed and expressed his satisfaction that a suit had
been commenced, for the reason, as he stated, he had
other interests which depended upon the determination
of the same questions or points of law; that he did not
want the land and only wanted his money, but wanted
the case to proceed to a final determination in the courts,
and, in reply to appellee's statement that he wanted to

pay the debt and would pay it as soon as he could, responded that was all right; he did not want the land and only wanted his money, but wanted the suit to progress to a final conclusion. Proof was also produced as to the contents of a letter written by appellant Henderson to counsel for the appellee, which letter was delivered to the appellee by his counsel but had been lost or mislaid. The substance of the letter, as disclosed by such proof, was that appellant Henderson was not seeking to get the land; that he only wanted his money, but wanted the case to go through the courts as he had other cases depending upon the same questions, and that the appellee should continue to rent and use the lands as theretofore and there would be no trouble about it. It was further proven that in the month of March, 1898, while the former case was pending in this court on the appeal prosecuted by the appellant Henderson from a decree adverse to him on the issues made under the original bill, the appellee, together with the owners of the fee in the lands here involved, negotiated a loan on the lands for the purpose of procuring the money wherewith to pay all the indebtedness of the appellee; that out of the proceeds of such loan the indebtedness of the appellee was paid, excepting the amounts necessary to redeem the lands here involved, and that the sum of $1000 was left with one John J. Pitts to be paid to the appellant Henderson by said Pitts, to discharge the amounts due upon the sale of the lands under the said Oberkoetter and Terrell judgments. It further appeared that the appellant Henderson was advised by the said Pitts that the said sum of money was in his (Pitts') hands ready to be paid to him. This sum was amply sufficient to cover the amount of the bids upon the land and interest thereon, and there is no escaping the conclusion the acts and statements of the appellant Henderson had induced in appellee the belief it would be accepted by Henderson without regard to the result of the litigation pending

between them. After the decision of the cause when first presented to this court, it became apparent to appellee the appellant Henderson was not willing to accept the money so in Pitts' hands, and the money was deposited with the clerk of the court, together with the additional sum of $86 to cover accruing interest, as a tender of the same to the appellant Henderson. A letter written by appellant Henderson to one T. C. Estee, who, in connection with Henderson, was acting as counsel for Terrell, was produced in evidence, which tended strongly to confirm the conclusion that the writer was encouraging delay on the part of the appellee in order redemption of the lands should not be effected and the certificates of sale should ripen into a deed or deeds. It is well settled, when lands have been sold under an execution for a grossly inadequate price, slight circumstances tending to show the judgment debtor was unfairly or fraudulently induced by the holder of the certificate of sale to neglect or delay making redemption from the sale will be seized upon by a court of equity as ground for affording relief to the debtor. (*Hamilton* v. *Quimby, supra; Davis* v. *Chicago Dock Co. supra; Roseman* v. *Miller, supra.*) The facts disclosed by the testimony preserved in this record justified the chancellor in regarding the case as within this equitable rule.

The intervening petition of Terrell was grounded on the theory the appellant Henderson had become seized of the title to the land sold by virtue of the execution on the judgment in his favor, and that in equity such title should enure to the benefit of the petitioner. Having determined Henderson should be divested of such title by the redemption of the lands from the sale, nothing remains to be adjudicated in a court of equity under the petition of said Terrell.

We find the decree free from error, and it is affirmed.

*Decree affirmed.*