## Case No. 4,972.

FOSTER v. HILLIARD et al.

[1 Story, 77; 3 Law Rep. 175.] [1]

Circuit Court, D. Massachusetts. May Term, 1840.

[1] [Reported by William W. Story, Esq. 3 Law Rep. 175, contains only a partial report.]

Mr. Dehon, for plaintiff.

S. Greenleaf, for defendants.

STORY, Circuit Justice. The case may be shortly stated, upon which the arguments have been addressed to the court. A devise was made of certain wild and uncultivated land in Maine to A., as tenant for life, remainder to his nephews, who were minors, in fee. After the death of the testator, the tenant for life, with the assent of the guardian of the minors, sold the land, and received a part of the purchase money, and then died, and the residue of the purchase money has since been received by the executors of the tenant for life. The minors have since come of age; they do not seek to disturb the sale; but they claim the whole purchase money from the executors. The present action is brought by one of the remainder men, to recover his share. There is no proof of any agreement between the tenant for life and the guardian, as to the distribution or division of the purchase money between the tenant for life and the remainder men. On behalf of the remainder men, it is contended: (1) That the purchase money is to be treated as a mere substitute for the land on the sale; that the tenant for life was entitled to the income thereof during his life; and that the whole principal now belongs to them. (2) That if they are not so entitled, the apportionment of the purchase money is to be made between them and the executors, not according to the value of the life estate of the tenant for life, according to the common annuity and life tables, but according to the actual facts, he having died shortly after the sale. On the other hand, the executors contend: (1) That the tenant for life was entitled, and they, as his executors, are entitled, to hold so much of the purchase money as the value of his life estate, at the time of the sale, bore to the whole interest in fee. (2) That the apportionment between them is to be made according to the value calculated by the common annuity and life tables, at the time of the sale, without any reference to the actual duration of his life. It is admitted, that there is no case exactly in point; and, perhaps, considering the frequency of sales by a tenant for life and a remainder man, it is a matter of some surprise, that no such case should be found. The circumstance, however, may be reasonably accounted for, either upon the ground, that the sale usually takes place upon distinct and independent bargains; or, where there is a joint bargain, the shares of the respective parties are usually ascertained and apportioned by some private agreement Here, no such agreement can be traced; and the sale seems to have proceeded upon a mutual confidence, that the proceeds would ultimately be divided justly and equitably between the parties, according to their respective rights. What are those rights? It seems to me, that when a sale of real estate is jointly made by two or more persons, having independent interests, the natural, nay, the necessary conclusion, in the absence of all other countervailing circumstances, is, that they are to share the purchase money according to their respective interests. If three tenants in common should jointly sell an estate, they would certainly be entitled to share the purchase money according to their respective undivided interests. If one held a moiety, and the others one quarter part each, they would share in the like proportions. So, if three parceners should sell an estate, they would all share equally in the purchase money. What difference can it make, whether they have undivided interests in the fee, or separate interests, carved in succession out of the fee? Whether they are tenants in common of the fee, or tenants for life, and remainder men in fee? In contemplation of law, in each case, the sale is a sale of distinct and independent interests; and if the parties do not fix the amount of their respective shares in the purchase money by some positive agreement, the natural conclusion is, not

that any one of them surrenders his right to the other, but that they silently agree to apportion the same among themselves according to their respective rights. Now, if in the present case, the tenant for life had separately sold his life estate to the purchaser, there is no pretence to say, that he would not have been solely entitled to the principal of the purchase money. What difference can it make, except as to the means of ascertaining the value of his life estate, that he proceeds to make sale, or joins in a sale of the remainder in fee? It does not strike me, that there is any. Suppose A. and B., the several owners of two adjoining acres of land, should unite and sell them both in one deed, to a purchaser for a gross consideration; would not the purchase money be divisible between them according to the relative value of the two acres? I think it clearly would.

But it is said, that, upon the sale, the purchase money was substituted for the land, and it is therefore to be treated exactly, as if the land had remained in the parties; and hence, that the tenant for life had an interest for life in the purchase money, that is in its income, and, subject thereto, that the whole purchase money belonged to the remainder men, the present claimants. Now, this is assuming the very point in controversy; it is stating the difficulty, and not solving it. When a sale is made, the ordinary result is, that the vendor is entitled to the purchase money itself, and not merely to the income thereof. If a different appropriation takes place, it is a matter of private agreement, and not an inference of law. If (as I have already suggested) a tenant for life of land sells his life estate, he has a title to the whole purchase money, and not merely to the income thereof. He sells his own estate, and he is entitled to its full value at the time of the sale. Then, how stands the law in cases, bearing a close analogy. Suppose the case of a tenant for life, remainder in fee. of lands under mortgage. in what manner do the parties contribute to the discharge of the incumbrance? Exactly, as we all know, according to the relative value of their respective interests in the land, calculated according to the value of the estate of the tenant for life, by the common tables. I need not cite authorities to this point; they are familiar to the profession. See 1 Story, Eq. Jur. § 487, where many of the authorities are collected; 1 Pow. Mortg. (by Coventry & Rand) 312, note M; Id. 314, in note Q.; 3 Pow. Mortg. (by the same) 920, 923, note H: Id. 1043, note O. The rule is founded upon the obvious equity, that every one of the parties in interest shall contribute in proportion to the benefit, which he derives from the discharge of the incumbrance. The same principle applies to the case of a sale. Each party is to participate in the purchase money, in proportion to the beneficial interest he has in the land. The same principle applies, where a mortgagee devises the mortgaged

estate to one for life, remainder over in fee; the tenant for life and the remainder man share the mortgage money, if paid by the mortgagor during their lives, according to the value of their respective interests at the time of the payment. See 1 Story, Eq. Jur. § 485, and note; 3 Pow. Mortg. (by Coventry & Rand) 1043. note O. This was indirectly admitted in Brent v. Best, 1 Vern. 69; and directly held in Thynn v. Duvall, 2 Vern. 117. That is certainly a case nearly approaching the present, where it might have been said, that the devisee for life of the mortgagee ought to be entitled only to the interest for life, and to no part of the principal. A doctrine somewhat different was asserted in the case of Lord Penrhyn v. Hughes, 5 Ves. 99, 107, where the master of the rolls said, that where there is a tenant for life and remainder men, entitled to an estate under incumbrances, the tenant for life and the incumbrancers have a right to have the estate sold to discharge the incumbrances, and the surplus of money, after discharging the incumbrances, is to be divided between the parties, in the proportion, that their interests bear to the estate; that is, as the master of the rolls afterwards explained, by putting the whole out at interest, and allowing the tenant the interest for his life. See White v. White, 9 Ves. 554, 4 Ves. 33; 3 Pow. Mortg. 1043, note O. It is not, perhaps, very easy to see the reason of this particular doctrine. It may be, that the tenant for life shall not, by his own act, compel the remainder men to submit to a sale, by which his interest in the remainder may be materially affected without his consent. But that case is unlike the present, where there is a voluntary joinder in the sale, or a confirmation of it. A court of equity may well decline to interfere in adversum to change real estate, by a sale, into personal estate, without imposing conditions, by which the proceeds shall retain throughout the character of the original fund, when it might not act in the same manner, where there had been a voluntary sale by the parties. The distinction is often acted on in courts of equity. See Story, Eq. Jur. § 1357. In the case of Houghton v. Hapgood, 13 Pick. 154, as far as I am able to gather from the report, (which, on this point, may be thought somewhat indeterminate,) a tenant by the curtesy of his wife's estate, which was sold by an executor improperly. but the sale was afterwards confirmed both by himself and by her heirs, was held entitled to share in the proceeds according to the value of his life estate, as tenant by the curtesy, calculated by the common tables of life annuities. If I take a right view of that case, it is in exact coincidence with the opinion, which I hold in the present case.

It appears to me, that the sale in the present case, having been confirmed and adopted by all the parties in interest, must be treated in the same way and manner, and have the same effect, as if it had been originally made

by the consent of all the parties in interest, and all of them were then competent to make the sale; and that the rights of all the parties were fixed at that time. And this leads me to say a few words on the second point, made at the bar, as to the rule of apportionment. I think it must be according to the value of the life of the tenant for life at the time of the sale, calculated according to the common tables. If I am right in the opinion already stated, that the rights of the parties were absolutely fixed at the very time of the sale, then it follows, as a necessary consequence, that they are entitled to share in the proceeds according to the relative values of their respective interests in the estate at the time of the sale. The case of Clyat v. Batteson, 1 Vern. 404, is not opposed to this doctrine. In that case lands in mortgage were devised to A. for life, remainder to B. in fee. B. bought up the mortgage, taking an assignment thereof in the name of trustees. A. died; and then B., the remainder man, brought a suit against the defendant, who was the representative of A., to redeem the mortgage, and insisted, that the representative ought to pay one third of the mortgage money, paid by B., by reason, that A. enjoyed the profits during his life. The court held, that if B. had brought the bill in A.'s lifetime, he would have been entitled to the proportion of the money according to the value of the respective estates of the tenant for life and the remainder man (that is, according to the old rule, now exploded, to one third); but that A. being dead, and having enjoyed the estate but one year only, the representative was bound only to allow for the time A. enjoyed the estate. This decision turned, therefore, upon the very point of the value of the estates of the tenant for life and the remainder man at the time, when the parties were charged with the payment of the money. But when the tenant for life sells his life estate, he sells it for what it is then worth, and of course his share of the purchase money does not depend upon the future event of his life or death, but upon its present value. It strikes me, therefore, that the true rule in the present case is to apportion the purchase money between the tenant for life and the remainder men, according to the relative values of their respective estates in the land at the time of the sale, unaffected by the subsequent events. It is said, that the duration of the life of the tenant for life, calculated according to the common tables, was over twenty years, whereas he died in a little less than four years after the sale. Be it so. The event has turned out unfavorably for the remainder men,—as contingent events sometimes do. But the tenant for life might have lived thirty years, and then the apportionment would have been favorable to them. The fact, therefore, does not shake the propriety of the rule of apportionment; but it only shows, that it has the common elements of uncertainty belonging to all calculations of contingencies. A tenant for life of a mortgaged estate may die within a year after he has been compelled to pay one third part of the mortgage money upon a decree for redemption, his life having been calculated as worth that proportion of the money. He may, on the other hand, live far beyond the period of average life. Yet this inequality has never been supposed to justify any departure from the general rule of contribution.

In the view, which I take of the case, the other points made at the bar are not material to be discussed. I think, that the remainder men are entitled to their proportion of the purchase money, according to the relative value of the life estate, and the remainder at the time of the sale; that the executors are liable for this amount to the remainder men, and that, upon so much of the money as either the tenant for life or the executors have received interest, they are entitled to receive their proportionate share of the interest.