JENNIE CALLICOTT ET AL. *v.* E. M. PARKS.[1]

1. CHARGE ON LAND. *Life-estate. Remainder. Apportionment of burden.*

     W. died, leaving a will devising his land to L., his widow, for life, with remainder to C. and others. W.'s estate was declared insolvent, and the land was sold, and bought by L., who enjoyed it for some years, and died. Her title was not good, because of a defect in the proceedings of sale, and after her death the remainder-men recovered the land in ejectment. Thereupon a suit was brought by the representative of her interest to fix a charge upon the land for the money ($5,000) paid by her on her purchase, on the ground that it went to pay off the debts of the estate. The remainder-men insisted that the land should not be charged with the $5,000 paid by L., but only with such an amount as, with six per cent interest per annum from the death of the testator to the time of such payment, would produce the $5,000, the interest not to be included in the charge upon the land. But the chancellor rendered a decree charging the life-estate with interest on the $5,000 after the payment thereof and during the life of the life-tenant (which was accomplished by denying to the life-estate any interest during that period), and charging the estate in remainder with that amount of principal at the death of the life-tenant, and interest thereafter. *Held*, that the decree of the chancellor was correct.

2. SAME. *Life-estate. Remainder. Rule of apportionment.*

     Where a tenant for life and a remainder-man sell the estate consisting of their united interests, the share of each in the proceeds, in the absence of an agreement, is to be determined by the value of the respective interests at the time of the sale, and the best mode of fixing the value of the life-estate is by the common tables of life-annuities. But where a court is called upon to apportion a burden between such estates, after the termination of the life-estate,

---

[1] CHALMERS, C. J., and GEORGE, J., being disqualified to sit upon this case, the governor, by authority of the statute, appointed W. L. Nugent and Frank Johnston special judges, who, with CAMPBELL, J., constituted the court by whom the case was heard and decided.

it will make the apportionment on the basis of actual enjoyment, by re-
quiring the life-estate to pay the interest of the encumbrance during the con-
tinuance of such estate, and leaving to the estate in remainder the rest of the
burden. *Foster* v. *Hilliard,* 1 Story, 77, and *Clyatt* v. *Batteson,* 1 Vern.
404, cited and approved.

APPEAL from the Chancery Court of Tate County.

Hon. R. W. WILLIAMSON, Chancellor, presiding, in place of
Hon. J. B. MORGAN.

In 1862, James H. Wilkins died, and by his last will and
testament left all of his estate to his widow, Lucinda M.
Wilkins, for the period of her natural life, and at her death
to Jennie Callicott and others, the appellants herein.   Mrs.
Wilkins qualified as administratrix of the estate, and acted in
that capacity for four years, when she resigned, and an admin-
istrator *de bonis non* with the will annexed was appointed and
took charge of the administration.    On the 5th of December,
1865, Mrs. Wilkins married E. M. Parks.

In July, 1867, the estate of James H. Wilkins, deceased,
was declared insolvent, and on the fourth day of November,
1867, the land belonging to the estate was sold by the admin-
istrator, and Mrs. Parks, *nee* Mrs. Wilkins, became the pur-
chaser thereof, at the price of $5,000.   She was then in
possession of the land, and continued to hold the same until
her death, in September, 1874.    E. M. Parks was then left in
possession of the land as the sole heir of his deceased wife.
There was some defect in the proceedings of the sale in insol-
vency, so that Mrs. Parks did not get a good title by her
purchase ; and on the 20th of October, 1876, Jennie Callicott
and the other devisees of the remainder recovered a judgment
in ejectment against Parks for the possession of this land and
for the rents thereof accruing after the death of his wife.

Mrs. Parks owed no debts at the time of her death, and
there was no administration upon her estate.   In 1878, E. M.
Parks filed the bill in this cause, claiming that the $5,000 paid
by Mrs. Parks should be a charge on the land, because it went
to pay off the debts of the estate, and asking for an account
to ascertain the amount due upon such claim, and that the land

be sold to satisfy the same. An account was stated under the directions of the chancellor, and a decree was rendered charging the land with the $5,000 paid by Mrs. Parks, and interest on that amount after the date of her death, from which was deducted the judgment in ejectment against E. M. Parks for rents received while the land was in his possession, after the death of his wife. From this decree the defendants below appealed.

*T. W. White*, for the appellants.

On what principle is the appellee to be reimbursed for the money paid out by Mrs. Parks on her purchase, and which went to pay valid debts of J. H. Wilkins, deceased? The case of *Foster* v. *Hilliard*, 1 Story, 88, is directly to the point. In that case the tenant for life had died, as here. Certain lands in which there was a life-tenancy were sold. The money was all paid to the life-tenant, who enjoyed it during his life. After his death a bill was filed by the remainder-men to recover their share of the proceeds of the sale of the land, claiming it all. Judge Story held, that although the life of the tenant for life had determined, as in this case, yet the transaction was fixed from the day of sale, and that the share of each was to be determined by the life-tables, notwithstanding the life-tenant was already dead. The objection was made there, as here, that what was once uncertain had been made certain by the death of the life-tenant, and that no tables were necessary to compute what death had fixed, quoting *Clyatt* v. *Batteson*, 1 Vern. 404. Judge Story said no, *Clyatt* v. *Batteson* is not opposed to this rule. It was decided under the old rule, now exploded, that the interest of the life-tenant is to be fixed at one-third, and he used the following language : " It strikes me, therefore, that the true rule in the present case is to apportion the money between the tenant for life and the remainder-man according to the relative values of their respective estates in the land, unaffected by subsequent events. It is said that the duration of the life of the tenant for life, calculated according to the common tables, was over twenty years, whereas he

died in less than four years.   Be it so.   The event has turned
out unfavorably for the remainder-man, as contingent events
sometimes do.   But the tenant for life might have lived thirty
years, and then the apportionment would have been favorable
to him.   The fact does not shake the propriety of the rule.''
He ordered the money to be divided according to the value of
the two interests, giving the life-tenant's estate the benefit
of *twenty years,* when in fact he died in less than *four.*

*Shands & Johnson,* for the appellee.

The authorities show that the courts have proceeded upon
three different principles in enforcing contribution between
life-tenants and remainder-men to discharge an encumbrance
or pay off a claim against the whole estate :  1. The life-tenant
was compelled to pay one-third of the whole debt charged
against the estate.   This method has  become antiquated,
and the courts have abandoned it as unreasonable.   2. The
life-tenant contributed `` whatever the present worth of an
annuity equal to the amount of the annual interest would be,
computed for the number of years the tenant will live.''   The
length of life of the tenant is calculated from tables of lon-
gevity.   3. The life-tenant was compelled to keep down the
annual interest during his life.   This was the principle the
chancellor applied in this case, and is the one applicable to the
facts in proof.   The true principle, the one underlying all
methods of computation, is that the life-tenant is bound to
pay the annual interest during his life on any encumbrance or
charge that may rest upon the whole estate.   If the mort-
gageor or encumbrancer enforces collection of his claim during
the life of the life-tenant, the remainder-men are not bound to
receive the share that should be contributed by the life-tenant
in annual instalments, but the amount to be paid by him at
once may be ascertained in the second method above indicated.
This, however, would not be the method of ascertaining the
share to be contributed by the estate of the life-tenant, should
the mortgageor delay enforcing collection of his claim till the
death of such tenant.   What before was in doubt and uncer-

tainty, and only ascertainable approximately, now is suscep-
tible of the clearest proof.    And it is useless to speculate as
.to the length of life when it can be accurately measured.    4
Kent's Comm., side-pp. 74, 75 ; 2 Washb. on Real Prop.,
top-p. 197, side-p. 573, sect. 10 ; 1 Story's Eq. 487 ; *Clyatt* v.
*Batteson,* 1 Vern. 404 ; *Swaine* v. *Perine,* 5 Johns. Ch. 491 ;
*Cogswell* v. *Cogswell,* 2 Edw. Ch. 231 ; *Stillwell* v. *Doughty,*
2 Bradf. 311.

CAMPBELL, J., delivered the opinion of the court.

The life-estate should not be charged with interest accrued
on the $5,000 before it was paid.    In this suit we are dealing
with the rights of the parties in reference to the $5,000 paid
for the land, and are content to charge the life-estate with the
interest accrued on that sum during the continuance of that
estate.

The chancellor adopted the correct rule, as applicable to
this case, for apportioning the burden of the charge between
the life-estate and the remainder.    He held that the estate for
life should pay the interest during its continuance, and accom-
plished this result by allowing to the appellee no interest on
the $5,000 during the existence of the life-estate.

We approve the rule declared by Judge Story in *Foster* v.
*Hilliard,* 1 Story, 77, which is, that when a tenant for
life and remainder-men sell the estate consisting of their
united interests, the share of each in the proceeds, in the
absence of agreement, is to be determined by its value at the
time of the sale, as fixed by the common tables of life-annui-
ties ; in other words, the respective owners of independent
interests are entitled to share in the proportion of those inter-
ests according to present value when sold, because they are
assumed to have disposed of them on that basis, and the best
mode of ascertaining such value is by the tables mentioned ;
but when the court is called on to apportion burdens after the
termination of the life-estate, it will make the apportionment
on the basis of actual enjoyment, and will require the life-

estate to pay the interest of an encumbrance during the continuance of such estate, for then it is not a matter of uncertainty as to the duration of the life-estate. It does not then depend on expectation, based on life-tables, but has become fixed, and the question is, not as to the value at the time of sale, — which, in case of a sale by the parties, is the inducement of each, and with reference to which it is assumed to have been made, — but the value at the time when the parties are charged with the payment of the money, and that is determined by the facts and not by life-tables.

The case of *Foster* v. *Hilliard*, 1 Story, 77, illustrates the rule of apportionment in sales by the parties, and *Clyatt* v. *Batteson*, 1 Vern. 404, illustrates that applied when the apportionment is made after the termination of the life-estate, not as the result of a sale by the parties, and therefore made conformably to their presumed intention, but by the court upon the facts, as matter of justice between the independent interests, and without regard to any presumed intention.

Reversed and remanded, for a decree to be entered in the court below in accordance with this opinion.