THE CITY OF JOLIET

414:40 LRA558n

*v.*

EMMA BLOWER *et al.*

*Filed at Ottawa April 1, 1895.*

1. ACTION—*lot owner may recover for changing grade of street.* A property owner has the right to recover compensation against a city for damages done his property by changing the grade of a street so as to cut off his communication with that or other streets.

2. EVIDENCE—*when life tables are admissible—experts.* The standard and recognized mortality or life tables, together with computations by experts based upon them, are competent evidence, in connection with other evidence, to show the expectancy of life and the present value of a life estate, for the purpose of estimating damages to a remainder-man from the change of grade of a street, as well before a jury in an action at law as in equity.

3. SAME—*city may show preparations to repair the injury.* In an action by a remainder-man for injury to land by the change of grade in a street, in which he alleges the removal of a bridge carrying another street across such street and his deprivation of the use of both streets, preparations by the city and a contract let for the construction of a new bridge and steps giving access to the graded street, and evidence that the material for such bridge has been placed upon the ground, are admissible.

4. SAME—*error not cured by view of the premises by the jury.* Error arising from the exclusion of such evidence is not cured by permitting the jury to view the improvement at a time when the abutment of such bridge is partly built and the material is upon the ground, where the instructions of the court limit the view to the lots and approaches as they exist.

5. SAME—*city need not provide complete plans to rectify damage, by ordinance.* Failure of a city to provide, by ordinance, an entire and specific plan for an improvement, including a bridge to carry a cross-street over a street of which the grade is changed, does not render inadmissible contracts for such bridge, in an action by a remainder-man for damages. *Hutt* v. *City of Chicago*, 132 Ill. 352, distinguished.

6. DAMAGES—*measure of, for changing grade of street.* Damages for a change of grade of a street should not be assessed upon the hypothesis of the continued existence of the same state of facts as existed at the time when a suit was brought by a life tenant for damages to the life estate, where the remainder-man has become plaintiff by substitution, and in the meantime the city has made contracts for changes which would reduce the damages.

7. SAME—*contracts admissible in mitigation.* Even if the damages are, in such case, to be estimated as of the commencement of the suit by the life tenant, contracts for changes which would reduce the damages suffered are admissible in mitigation.

*City of Joliet* v. *Blower*, 49 Ill. App. 464, reversed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding.

Bluff street, in the city of Joliet, runs north and south along the base of a hill. Broadway is the next street west, and is on the top of the hill. Hickory street is the next street west of Broadway, and these streets are parallel with each other. Exchange street runs west from Bluff street, and intersects Broadway and Hickory. Lots 4 and 7, in block 14, in West Joliet, lie sixty feet north from Exchange street, between Broadway and Hickory. Lot 4 fronts on Broadway, and lot 7 lies north, and extends from the rear of lot 4 to Hickory. This is residence property, having a house on lot 4 and a barn on lot 7. In order to improve the grade on Exchange street, and avoid going up the steep hill to Broadway for travel from Bluff street to streets west of Broadway, the city, some years ago, cut down about two-thirds, in width, of Exchange street, to the depth of about fifteen feet, and carried Broadway over it with a bridge, but left the remainder of the street as a means of access from Broadway to Bluff street. There were, then, upper and lower roadways on Exchange street. A few years thereafter the city excavated the whole street to the depth of the lower roadway, removed the upper roadway and cut off access to Exchange street from Broadway. Harriet H. Cust, the owner of a life estate in said property, brought suit to recover damages resulting to her estate in the property from the last excavation, by which the upper roadway was removed. Afterwards the appellees, who are owners of the remainder expectant upon the termi-

nation of the life estate, were admitted as plaintiffs, and the suit was dismissed as to Harriet H. Cust, and the declaration amended so as to seek a recovery for the injury to the remainder. There was a trial, resulting in a verdict for appellees for $1000, on which judgment was entered. The judgment was subsequently affirmed in the Appellate Court.

GEORGE S. HOUSE, and JOHN W. D'ARCY, for appellant.

EGBERT PHELPS, for appellees.

Mr. JUSTICE BAKER delivered the opinion of the court:

Three grounds are urged for the reversal of the judgment:

*First*—It is claimed that there was error in the rulings of the trial court upon the instructions in regard to the matter of the liability of the city to respond to appellees in damages for so changing the grade of Exchange street as to prevent access from Broadway to it, and, by means of it, communication with the main and business portions of the city, whereby the property of appellees was depreciated in value. There was no substantial error in any of these rulings. It is well settled that under the constitution and laws of this State there is a right of action to recover compensation for the damage done to the property of appellees by changing the grade on Exchange street. *Rigney* v. *City of Chicago*, 102 Ill. 64; *Chicago and Western Indiana Railroad Co.* v. *Ayres*, 106 id. 511; *City of Bloomington* v. *Pollock*, 141 id. 346.

*Second*—There is a life estate in the premises for the life of Harriet H. Cust, mother of appellees, and appellees are the owners of the remainder, in fee. Appellees introduced evidence tending to prove the damages to the property as an entirety, and then introduced testimony tending to prove the value of the interest of their mother in this damage, to be deducted from the entire damage,

and leaving the balance as their damage. As a part of this testimony they introduced the Northampton, the Carlisle, the London, the Equitable and the Wigglesworth mortuary tables, and the testimony of an expert, who testified to computations based on the said several tables. These tables, and the evidence of the expert, were objected to, and their admission in evidence over these objections is assigned as error.

The standard and recognized mortuary or life tables are competent testimony, in connection with other evidence, for the purpose of showing the expectancy of life and the present value of a life estate or annuity, and also in estimating damages, and in apportioning a burden or damage or benefit between a life tenant and the remainder-man or reversioner. Such testimony is admissible as well before a jury in an action at law, as before the chancellor in a suit in equity. But such tables do not furnish absolute and conclusive rules for the guidance of either court or jury, and the doctrine is, that they are to be considered along with all the circumstances in proof, and given weight accordingly. *Jackson* v. *Edwards,* 7 Paige, 386 ; *William's case,* 3 Bland's Ch. 186 ; *Schell* v. *Plumb,* 55 N.Y. 592; *Sauter* v. *Railroad Co.* 66 id. 50; *Wager* v. *Schuyler,* 1 Wend. 553; *Donaldson* v. *Railroad Co.* 18 Iowa, 280; *Walters* v. *Railroad Co.* 41 id. 71; *Gallagher* v. *Railroad Co.* 67 Cal. 13 ; *Central Railroad Co.* v. *Crosby,* 74 Ga. 736; *Hunn* v. *Railroad Co.* 78 Mich. 513 ; *Vicksburg and Meridian Railroad Co.* v. *Putnam,* 118 U. S. 545; *Scheffler* v. *Railroad Co.* 32 Minn. 518; *Roose* v. *Perkins,* 9 Neb. 304; *City of Lincoln* v. *Smith,* 28 id. 762; *Mills* v. *Catlin,* 22 Vt. 98. There was no error in admitting in evidence the mortuary tables and the testimony of the expert.

*Third*—We think, however, that the third ground of error relied upon is meritorious. The declaration alleges that "on or before the 24th day of December, A. D. 1891, pursuant to said order and under the directions of said defendant, said Exchange street, at its said inter-

155—27

section with Broadway, and for a long distance east and west from said intersection, was excavated and the earth and stone removed therefrom to a great depth, to-wit, to the depth of eighteen feet, and still so remains, and said bridge was also, pursuant to said order and direction, removed and still so remains, thus severing Broadway into two parts, and rendering ingress and egress to and from said premises by way of Exchange and Broadway streets impossible, and greatly depreciating the value of said premises and greatly damaging the said plaintiffs, to the great wrong and injury of the plaintiffs, and thereby depriving the said plaintiffs and occupants of said premises of the use of said Exchange street by way of Broadway, and of Broadway by way of Exchange street, as a means of passage to and from said premises, either for the use of vehicles or foot travelers, whereby the value of said premises was and is greatly damaged and reduced in value, and the said plaintiffs thereby damaged in a manner not common to the public at large, to the damage of the plaintiffs of $5000, and therefore they bring suit," etc.

The evidence shows substantially this state of facts : The city had theretofore excavated the south forty feet of Exchange street, and in so doing had protected each side of the excavation by a secure stone wall, and had continued Broadway over the cut or excavation by a bridge, and the street had remained a number of years in that condition. The improvement here in question consisted in the excavation of the remainder of Exchange street to the grade of the cut already made on the south side of the street. In entering upon this improvement the city did not adopt, by ordinance, any specific plan of construction. In September, 1891, it entered into a contract with one McHugh, and that contract covered only the taking out and removal of the rock and earth from the north side of the street, to the level of the grade of the first excavation. The making of that excavation

necessitated the removal of the north retaining wall, and of the bridge that connected Broadway to the north with Broadway to the south. At the time of the trial the improvement had so far progressed as that the excavation had been made, but no new north retaining wall or abutment had been put up, or bridge constructed over Exchange street, or steps or other way constructed leading from the grade of Broadway to the grade of Exchange street.

Appellant offered in evidence certain preliminary proceedings of the common council of the city, and a certain contract on file in the city clerk's office, made by the city with one Murphy on the fifth day of December, 1891, for the construction of the north bridge abutment, with a flight of stone steps, guarded by hand rails, on each end of the abutment, east and west, affording passage-ways for pedestrians from the surface of Broadway to the level of the cut; and a certain other contract made and executed on the fifth day of August, 1892, by and between R. D. Wheaton & Co. and the city, for the construction of an iron and steel bridge on Broadway, over Exchange street cut, said bridge being the full width of Broadway, and having a sidewalk on each side; and also the testimony of the city engineer, to the effect that all the material for the bridge had been delivered, and was on the premises ready to be put up; that the abutment had been in part constructed, and that the work had been delayed on account of the weather, it having frozen so hard that it was impossible to do the mason work. All of the evidence so offered was objected to by appellees, and it was excluded by the court from the jury.

In our opinion, none of the grounds suggested in defense of the action of the court in the premises are tenable. The damages here sued for are for permanent injuries to the real estate and injuries to the reversionary interest of appellees.

There is no warrant in the record for the assertion that all claims for damages, except such as resulted from cutting off access to Exchange street for ·wagons and carriages, were abandoned on the trial, and that therefore the evidence was irrelevant. The declaration, as it stood ·at the trial and still stands, charges that "said bridge was also, pursuant to said order and direction, removed, and still so remains, thus severing Broadway into two parts, and rendering ingress and egress to and from said premises by way of Exchange and Broadway streets impossible, and greatly depreciating the value of said premises." And it also charges that there was a deprivation "of the use of said Exchange street by way of Broadway, and of Broadway by way of Exchange street, as a means of passage to and from said premises, either for the use of vehicles or foot travelers." And the court, in its instructions, expressly limited the measure of damages to the condition of the improvement as it stood on the completion of the contract of McHugh, and it moreover gave to the jury this instruction, to-wit:

"In considering this case, the jury are instructed to disregard the records and proceedings of the city council of Joliet concerning the erection or proposed erection of a new bridge on Broadway, spanning Exchange street, and concerning the building of abutments for such bridge, and also all papers and contracts offered in evidence by the city of Joliet relating to such proposed bridge and abutments, and also the testimony of Mr. Comstock, the city engineer, relative to such proposed bridge and abutments, and the jury are instructed to consider this case precisely as if no such evidence had been offered."

Nor does it help matters that the jury were permitted to view the improvement, and that the abutment was then partly built and the material for the bridge on the ground. By instruction 6, given for appellees, the probative force of this "view of the premises" was expressly limited and restricted to the lots, and the approaches

"as they now exist," and "the location and condition of the excavation of the earth and stone from the north part of Exchange street, as made by Patrick McHugh." This instruction, especially when read in the light of the other instructions of the court and the rulings of the court in excluding testimony, would, without doubt, be understood by the jury as excluding from all consideration the partly built abutment and the bridge materials.

Nor is it material that the city council did not, by ordinance, adopt an entire and specific plan for the improvement, which included the bridge, the north abutment and the flights of stone steps. Appellant was quite as much, in fact more tightly, bound by the contracts that it made with Murphy and with R. D. Wheaton & Co. than it would have been by a formal ordinance simply providing for the proposed improvement in all its details. It might have repealed the latter, but it had no power to abrogate the contracts. And the introduction in evidence by the city of the contracts, for the purpose of reducing the damages, would, so far as appellees are concerned, have effectually bound the city to either complete the abutment, stairways and bridge, or respond to them in damages for a failure so to do.

We do not regard *Hutt* v. *City of Chicago*, 132 Ill. 352, as here in point. It was a special assessment case, and it was there held, that where an ordinance for the extension of a street, which is to cross a river which is a navigable stream, makes no provision for a bridge over the river, and orders none to be built, it is improper to assess the property along such proposed street for benefits it may derive from a bridge over the river, which may or may not thereafter be ordered and built.

Nor do we think that damages should be assessed in this case upon the hypothesis of the continued existence of the same state of facts that existed on the 24th day of December, 1891, when Harriet H. Cust brought suit for damages to her life estate. Appellees did not come

into the case until November 9, 1892. They then filed an additional count or amended declaration to recover damages to their reversionary interest, and thereupon Harriet H. Cust was, on her own motion, dismissed out of the suit. As to appellees, and the new cause of action set up in their pleading,—the injury and damage to the reversionary estate,—the commencement of the action cannot be regarded as having been prior to November 9, 1892. Long before that time the city had made its contracts with Murphy and with R. D. Wheaton & Co. In fact, it had made the Murphy contract prior to the time Harriet H. Cust brought the original suit. *Dunphy* v. *Riddle*, 86 Ill. 22; *Crowl* v. *Nagle*, id. 437; *Phelps* v. *Illinois Central Railroad Co.* 94 id. 548.

But even if it were to be regarded otherwise, and deemed that the commencement of the suit of appellees dates from December 24, 1891, yet we see no good reason why the proffered evidence was not admissible in mitigation of damages. By the judgments below appellees obtain damages for permanent injuries to their reversionary interest in the property, on the theory that there is no bridge to connect Broadway north of Exchange street with Broadway south of that street, and no steps or other passageway for pedestrians that connects Broadway with Exchange street, and at the same time their property derives all the benefits of such a bridge and of two passageways for foot travelers, leading from Broadway to the grade of Exchange street. Such a result is manifestly and radically wrong and unjust.

Our conclusions are, that it was error to exclude the offered evidence, and also error to rule upon the instructions in conformity with the view indicated by such exclusion.

The judgments of the Appellate and circuit courts are reversed, and the cause is remanded to the circuit court.

*Reversed and remanded.*