HARRY WILLIAM POLSLEY and CORA MAY COATES, Appellees, v. DELIA A. FLOWERS, Appellant.

**Trusts:** SALE BY TRUSTEE AND REMAINDERMEN: DIVISION OF PROCEEDS: EFFECT. In this action a life tenant and the remaindermen joined in the conveyance of land owned by them and amicably divided the purchase money, the life tenant taking her share and investing it in other lands in her own name. *Held,* that the portion which the life tenant received was in her own right as a consideration for the life estate, and that the property purchased with the proceeds thereof was not held in trust for the remaindermen, but that upon the death of the life tenant it descended to her heirs.

*Appeal from Page District Court.*—HON. O. D. WHEELER, Judge.

FRIDAY, DECEMBER 16, 1910.

THE opinion states the nature of the action and the material facts.—*Reversed* and *remanded.*

*G. I. Miller,* for appellant.

*Parslow & Peters,* for appellees.

WEAVER, J.—Thomas Fleming, a resident of Page County, Iowa, died January 24th, leaving a will by which he devised his entire estate to his wife, Jane Fleming, for life, with remainder over as follows: One-fourth each

to his sons, Charles Fleming, Franklin Fleming, and Edmund Fleming, and one-eighth each to Harry W. Polsley and Cora M. Polsley, children of his daughter, Delia A. Flowers, but these grandchildren were not to come into possession of their said shares until they arrived at the age of twenty-five years and after the lapse of said life estate. The principal item of the estate left by the testator was a farm of one hundred and ninety acres in Page county. The will was duly probated, and the widow enjoyed the use, rents, and profits of the farm until March 1, 1902, when she and her three sons, Charles, Franklin and Edmund, and her grandchildren, Harry W. Polsley and Cora M. Polsley, being all of the beneficiaries under said will, and all of full age, united in selling and conveying said land to one Turnbull for the sum of $10,800. Of this sum $2,000 each was paid to Charles, Franklin and Edmund, and $1,000 each to Harry W. Polsley and Cora M. Polsley, and the remainder, $2,800, to the widow, less such expenses as attended the sale. Soon afterward Jane Fleming and her son Charles purchased another farm, taking the title jointly. The agreed purchase price was $10,200, of which $2,200 was contributed by the mother, $2,000 by Charles, and the payment of the remainder was secured by mortgage which is still a lien on the land. The payment so contributed by Jane Fleming was made from the money received by her from the sale of the home farm. On August 14, 1909, Jane Fleming died intestate leaving as her heirs the three sons above named and the daughter Delia A. Flowers. Within thirty days thereafter this action was instituted for the partition of the land to which the deceased held title at the time of her death. Upon the trial below it was stipulated and agreed that each of the sons was the rightful owner of a fourth part of the undivided half, or the one-eighth of the entire tract, and this appeal in no manner affects the interests thus settled and determined. As to the other one-eighth part, issue is joined

between the daughter Delia A. Flowers and her children. Her claim is to the effect that Jane Fleming was seized in her own right of the undivided one-half of said land, and, dying intestate, such title was cast upon her four children Charles, Franklin, Edmund, and Delia in equal shares. This proposition is contested by Harry M. Polsley and Cora M. Polsley, who say that under the circumstances above related their grandmother Jane Fleming must be held to have taken such title in trust for the benefit of the remaindermen named in the will of Thomas Fleming, and to have acquired for herself no heritable interest in said land, with the result that the title to the one-eighth part now claimed by the said Delia A. Flowers passed equitably to the appellees, and that their mother has no part or share therein. The trial court sustained this latter contention, and found the equitable title to said one-eighth share to be in Harry W. Polsley and Cora M. Polsley (now Coates). The defendant Delia A. Flowers appeals.

To sustain the conclusion arrived at by the court below, it must be found from the evidence that the $2,200 which Jane Fleming invested in this purchase was a trust fund in her hands, and that such trust was as a matter of equity impressed upon the property so acquired by her. Much of the testimony was subject to the objection made to the competency of the witnesses, but the admitted or stipulated facts are probably sufficient to determine in a reasonably satisfactory manner the relations and rights of the parties in the subject matter of the litigation.

It appears quite clearly as above stated that Jane Fleming received about $2,800 out of the $10,800, for which the land devised by the will was sold, and that of this sum she used $2,200 in the purchase of the property in controversy. But this of itself by no means impresses a trust character upon the money in her hands or upon the land purchased with it. In other words, the fact that she received money in consideration of her uniting in the

conveyance of the land in which she held a life estate does not necessarily tend to show that she received it in trust. On the contrary, in the absence of any other showing, the natural inference is that she received it in her own right, and the burden of impressing it with any other character rests upon the appellees. The record presents a case where the title to land stood in six persons; that is to say, a life estate in the widow of Thomas Fleming, and the remainder in his three sons and the two grandchildren named in the will. All these persons—life tenant and remaindermen—united in a conveyance to Turnbull. Each could convey what he or she owned and no more—the widow her life estate, and the sons and grandchildren their remainder. Each conveyed that which represented substantial value, and in the absence of any agreement to the contrary each would be entitled to demand and receive a proportionate part of the consideration given for the full title so conveyed. Even without the concurrence of the remaindermen, the widow might have sold and conveyed her life estate, and the money or property so derived would belong to her in her own right, and upon her dying intestate would descend to her heirs. *State v. Culbertson,* 50 Mo. 341; *Ferris v. Poucher,* 152 Mich. 251 (115 N. W. 1054). So, too, if, being the life tenant, she had assumed to convey the entire fee and received full value therefor, it would not ordinarily bind the remaindermen. Her deed would only be effective to the extent of her interest in the land, and the remaindermen would be entitled to no part or share in the consideration unless they saw fit to ratify her act, and relinquish to the purchaser all their rights in the property, in which case they might call her to account. The sum paid by Turnbull ($10,800) was not given in consideration of his purchase of the life estate alone or of the remainder alone, but in consideration of his receiving a conveyance of both, thereby uniting in himself both estates, and perfecting his title to the land. It was of

course competent for the widow to waive her right to share in said payment, but there is not a word of testimony that she did so, nor is any such claim asserted by the appellees. On the contrary, it would seem that the money was amicably divided, $8,000 being distributed in due proportion to the remaindermen, and $2,800 to the life tenant; and, so far from recognizing any right therein on the part of any other person, she proceeded at once to invest it in property in her own name and to deal with that property as her own. The grantors, including the appellees, were all of full age. They voluntarily conveyed their several interests. If they were not satisfied to accept the sum received by them in full payment for their interests which they conveyed, they could have refused it and withheld the deeds, or they could have delivered their deeds and taken the matter into court for a judicial determination of their respective shares in the proceeds of the sale. But the very fact that the money *was* divided, each taking a substantial share thereof, and that there is no evidence whatever tending to show any agreement or understanding whereby the widow bound herself to treat the money received by her as a trust fund for the appellees, is a sufficient reason for denying the relief demanded by them. To establish a constructive trust requires of the party asserting it clear and satisfactory proof. Here there is an utter absence of proof. Counsel for appellee appear to argue, and we presume that such was the view of the trial court, that this burden was satisfied by clear and satisfactory proof that the money which the widow put into this land was the same money which she received from Turnbull for the sale of the land devised by her husband's will. But this, as we have already said, does not follow. She had a valuable interest in the land conveyed. She had the legal right to sell and convey that interest and receive and keep the consideration paid for it as her own. No trust attached to it. There is not the

slightest suggestion in the record that she undertook to sell or convey to Turnbull anything more than her life estate.   On the contrary all parties in interest acting in apparent amity united in the conveyance, and, if there had been no agreement between them for the division of the price so received, the law would have enforced a distribution in proportion to the value of the estates or interests which they had respectively conveyed to the purchaser. If they did agree upon what they deemed a fair division and proceeded to make a distribution accordingly, the court, in the absence of fraud, will not undertake to review the transaction or to inquire whether any one of them got more or less than his or her equitable share.   It is evident that these parties did have an understanding or agreement of some kind, because they did divide the money received for the land, but as to the terms thereof, or the language employed therein, we have no showing of any kind except as we may infer it from the division itself, and this affords no ground for inferring that the widow took her share in trust.   She was entitled to receive a share proportionate to the value of the estate she conveyed, and to receive it in her own right because the thing she sold (her life estate) was something she held in her own right, and she was not bound to relinquish or part with it without compensation.

Though not necessarily involved in the issue as presented to us, it may be added that the amount received by the widow does not appear to have been in excess of her proportionate share of the price of the land.   She was receiving from the farm a yearly income of about $525, and its fair rental value appears to have been about $3 per acre or $570 per annum.   Her expectancy of life at the date of the sale was eight and three-fourths years, and the present worth of an estate or annuity calculated upon the basis of standard tables at the legal rate of six percent or even at four percent was considerably more than the

sum which she actually received. To determine the value of a life estate various rules have been approved. In England it has been considered that ordinarily a life estate should be reckoned at one-third the full value of the property. *Clyat v. Batteson,* 1 Vern. Ch. 404. That rule has been followed in Pennsylvania and Maryland. *Dennison's* case, 1 Pa. 201; *Dalesman's* case, 127 Pa. 349 (17 Atl. 1086, 1100); *Williams'* case, 3 Bland (Md.) 186. In South Carolina it has been held to be equitable to allow an amount equal to the accumulation of legal interest on the value of the entire estate for a period of seven years. *Garland v. Crow,* 2 Bailey (S. C.) 24.

It is perhaps now more frequently said that the court should take into consideration the tenant's expectancy of life and all other circumstances affecting the probable duration of the estate, the nature and value of the property, and the use to which it is put, or of which it is susceptible, and therefrom approximate as near as may be the present worth of the estate for which compensation is to be made. *Foster v. Hilliard,* 9 Fed. Cas. 549 (Fed. Cas. No. 4,972); *Thompson v. Thompson,* 107 Ala. 163 (18 South. 247); *Henderson v. Harness,* 184 Ill. 520 (56 N. E. 786); *Cusick v. Boyne,* 1 Cal. App., 643 (82 Pac. 985); *Joliet v. Blower,* 155 Ill. 414 (40 N. E. 619); *Estabrook v. Hapgood,* note, 10 Mass. 313; *Keniston v. Gorrell,* 74 N. H. 53 (64 Atl. 1101).

In the *Thompson* case, *supra,* which is in many respects parallel with the one before us, the Alabama court decides that, where life tenant and remaindermen unite in the conveyance of the property without any agreement as to the apportionment of the money so realized, a court of equity will intervene and apportion it according to their respective interests at the time of the sale. In *Keniston v. Gorrell, supra,* certain timber standing on the land was destroyed, and the amount of damage assessed being paid into court question arose over the respective claims of life tenant and

remaindermen. In disposing of it the court says in substance that either of two methods could be properly pursued —the money could be treated as part of the principal of the estate, and the use of the entire amount be given over to the tenant during life, or it could be divided, giving to each his or her equitable portion. The latter plan had been adopted by the trial court, and the decree was affirmed. In words which aptly fit the case at bar the court says: "The only question presented is whether the order of the superior court directing an apportionment by payment to the life tenant of the present worth of her interest on the sum according to the tables of mortality is forbidden as a matter of law. The plaintiff could have sold and conveyed her life interest in the whole estate, and the proceeds would have been her own property. *Smith v. Jewett,* 40 N. H. 530. The remaindermen could have done the same. But the settlement and sale which produced the fund in question were joint, not several. When a fund is so created in the absence of agreement it must be understood that the parties contemplated an equitable division according to their respective interests." Neither of the cases we have quoted from presents as strong a showing for the life tenant as does the one under consideration, for here there was a division of the fund between the parties, and, as we have already pointed out no witness undertakes to assert the existence of an agreement by which the share taken by either was to be held in trust for the others.

The claim put forth by the appellees is too unreasonable, not to say unnatural, to be sustained by the court except upon very persuasive evidence. Of this there is a marked lack. By her act in uniting with the other devisees in the sale of the land and the division of the proceeds she conferred upon them a valuable favor. Legally and equitably she alone was entitled to the use and enjoyment for life of the whole estate, whether it remained in the

form of land or was converted into money. By her waiver of that right and acceptance of the part apportioned to her, the sons and grandchildren came at once into possession of $8,000 some seven and one-half years before they would otherwise have been entitled to demand or receive it. Computing the money to have been worth no more than five percent per annum, they thus obtained more than the then present worth of their interest as remaindermen of the estate. From whatever viewpoint the case is considered, the fact is apparent that appellees have received the full share devised to them by their grandfather, and we find no good reason why they should further profit at the expense of their mother and grandmother. Their claim to share in the land of which Jane Fleming died seized must be dismissed, the title of the appellant to the one-fourth part of said land must be confirmed and established, and partition made upon that basis.

Cause will be remanded for further proceedings in harmony with this opinion. The motion of appellee to dismiss the appeal is overruled as being without merit. Costs of appeal will be taxed to appellees.—*Reversed* and *remanded.*