**LEE et al. v. McKINNEY et al.**

Court of Appeals of Kentucky.

March 27, 1953.

Owen S. Lee, Lexington, Wheeler & Marshall, Paducah, for appellants.

Waller, Threlkeld & Whitlow, Paducah, for appellees.

COMBS, Justice.

The parties to this suit owned jointly a business building in the City of Paducah. The appellee Roy W. McKinney owned the life estate of L. W. Watkins in one-half of the property (which he had acquired by purchase from Watkins) and an undivided one-fourth interest in the remainder, subject to the life estate. The appellee E. Weaks McKinney-Smith and the appellants owned the remainder of the property, the amount of their proportionate interests not being important for the purpose of this opinion.

The appellees filed this suit against the appellants for sale of the property and division of the proceeds. The appellants, by answer, counterclaim and cross-petition, also requested a sale of the property and division of the proceeds, and in addition thereto sought damages against the appellee Roy W. McKinney for waste growing out of his alleged refusal to pay his proportionate part of the cost of a new elevator which appellants desired to install in the building. A general demurrer and motion to strike were sustained to the claim for waste.

A partial judgment, directing sale of the property, was entered November 24, 1950. The property was sold on January 8, 1951, for $50,000. The sale was confirmed by order entered three days later. On March 7, 1951, L. W. Watkins, under whom Roy W. McKinney claimed the life estate in one-half the property, died. Order of distribution, including formula for computation of the value of the life estate was entered June 8, 1951.

The appeal presents two questions: (1) Did the trial judge correctly compute the value of L. W. Watkins' life estate which was owned by Roy W. McKinney? (2) Were the demurrer and motion to strike properly sustained to the claim for waste against Roy W. McKinney?

Appellants' objection to the method of computing the value of the life estate is twofold. First, they say the life estate terminated and had no value beyond the death of L. W. Watkins, and should not have been evaluated beyond the date of his death; second, they say the court did not use the right formula in computing the value of the life estate.

The parties have cited us to very little authority on the first question and our own investigation has not been much more successful. There are four significant dates: The date of the sale (January 8); the date of the confirmation of the sale (January 11); the date of Mr. Watkins' death (March 7); the date of distribution (June 8). It is said in appellants' brief that the trial judge considered the date of sale as the effective date, apparently on the theory that was the date on which the life estate terminated. Since Mr. Watkins was still living at the time the report of sale was confirmed, it is unnecessary for our purpose to determine whether

the effective date was the date of sale or date of confirmation.

■ We think the court correctly adjudged that McKinney, as the successor in title of L. W. Watkins, was entitled to the value of his life estate, based upon the applicable mortality table, although Watkins had died before the order of distribution was entered. The life estate was terminated at the time of sale, or at least when the sale was confirmed, and the interest of the life tenant was transformed at that time from an interest in the real estate to an interest in the proceeds of sale. Watkins' subsequent death did not affect the right of his vendee to claim his pro rata share of the proceeds. It is said in the annotation in 102 A.L.R. 993: "There seems to be no escape from the conclusion that, ordinarily at least, where the rule of commutation was applicable to a proposed sale, and a sale actually occurred during the life of the life tenant, the amount applicable in respect of the life estate is unaffected by the circumstance that the life tenant died soon after the sale." The cases of Foster v. Hilliard, 1840, Fed. Cas. No. 4,972, 1 Story 77, and Mulford v. Hiers, 1860, 13 N.J.Eq. 13, are cited as authority for the statement. It is true these two cases are old, but the reasoning in them is sound and we think they lay down the correct rule.

■ We agree with appellant that the court did not use the proper table in computing the value of the life estate. From the Carlisle table on page 2910 of KRS, the court found Mr. Watkins' life expectancy to be 4.12 years. One-half the sale price of the property, less court costs, was $24,790.-92. The court multiplied that figure by 6% to determine the income for one year. He then multiplied the result by 4.12 to determine the value of the life estate. The error consists in the failure to take into account the value to the recipient of a sum in gross at the present time, as compared to the same sum paid at intervals over the period of the life expectancy.

■ The court should have used either the table on page 2907, KRS, 1948 edition, entitled U. S. Life Table for Valuing Life Estate, or one of the two alternate tables on page 2909 of the same volume. The major difference between the three tables is that each of them uses a different rate of interest, that is, either 4%, 5%, or 6%. As a matter of policy, this Court will not determine which of these tables should be used but will leave that to the discretion of the trial court. However, it is said in the note on page 2909: "The tables most generally in use today are based on 4% interest, in view of the fact that in recent years interest rates have been low." But see Yost v. Ratliff, Ky., 246 S.W.2d 447, where we approved a computation based on 6% interest for mineral properties. The income producing possibilities of the property no doubt would be one factor which should be taken into consideration in deciding upon the rate of interest.

■ The remaining question is whether the demurrer should have been sustained to that part of the amended petition which charges McKinney with waste. We find no error in this respect. As we construe the pleading, the allegation of damage is insufficient. No money was expended by appellants for an elevator, and although it is stated the value of the property was depreciated due to McKinney's refusal to pay his proportionate part of the cost of an elevator, there is no allegation the amount of depreciation was in excess of the cost of a new elevator. Since appellants, as joint tenants, were obligated to pay their proportionate part of the cost of the elevator, McKinney's failure to cooperate has caused no damage to them.

The judgment is affirmed in part and reversed in part, with directions for further proceedings consistent with this opinion.