81 N.J. Super. 441 (1963)
195 A.2d 907
MT. FREEDOM PRESBYTERIAN CHURCH, A NEW JERSEY RELIGIOUS CORPORATION, PLAINTIFF,
v.
SELWYN H. OSBORNE AND TRUST COMPANY OF MORRIS COUNTY, TRUSTEE UNDER THE WILL OF THE LATE ANNA CAROLINE DRAKE OSBORNE, DECEASED, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided November 21, 1963.
*442 Messrs. Hillas & Thierfelder for plaintiff (Mr. Erhard B. Thierfelder appearing).
Mr. Eugene F. Hillery for defendant Selwyn H. Osborne.
Mr. Arthur G. Baker for defendant Trust Company of Morris County, Trustee, etc.
MILLS, J.C.C. (temporarily assigned).
This is an action for declaratory judgment for an apportionment of the proceeds of sale of a right of way among vested remainderman and life tenants.
Anna Caroline Drake Osborne died a resident of Morris County, leaving a last will and testament probated before the Surrogate of that county. In and by the third paragraph of her will defendant Selwyn H. Osborne was devised a life estate in certain real estate known as the "Osborne Upper Farm," on the understanding that Doris D. Osborne may enjoy the said "Upper Farm" with him. The will further provided *443 that if Selwyn predeceased Doris, then the trustee was to rent "Upper Farm" and use the net income for her support, maintenance and medical care for her life. Upon the death of both Selwyn H. Osborne and Doris, "Upper Farm" was devised to plaintiff, its successors and assigns forever.
On August 28, 1962 plaintiff and defendants granted a right of way across said "Upper Farm" to a power company for $10,250. Said sum is in escrow pending the outcome of this action.
Selwyn H. Osborne was born September 22, 1901 and is 62 years of age. He is average in health and life expectancy. Doris D. Osborne was born on May 24, 1918 and is 45 years of age. She is an incompetent and has been confined for many years in the New Jersey State Hospital at Greystone Park.
The above facts are not in dispute. The matter was pretried, and the issues raised were: (1) is Doris a necessary party, and (2) should the proceeds of the sale of the right of way be apportioned among the parties.
Briefs were filed and the matter was orally argued.
Defendant Trust Company argues that Doris is a necessary party defendant, and since she is incompetent, a guardian ad litem should be appointed to protect her interest. No rule, statute or case is cited in support of this contention. The Trust Company seeks allowance for counsel fees and real estate appraisal fees. The request is based on the necessity to appraise the damage and on the long negotiations between counsel and the power company to obtain $10,500 for the right of way. Plaintiff participated in the negotiations and raises no question of the price  nor does the defendant Selwyn H. Osborne.
The question of a beneficiary as a necessary party is determined by whether the trustee may reasonably be regarded as the representative of the beneficiary. A party is not necessary in a suit where neither the administration nor the construction of the will nor the rights between the trustee and the cestuis que trust are in dispute. Stevens v. Bosch, 54 *444 N.J. Eq. 59 (Ch. 1895). Doris D. Osborne was not a necessary party; she was adequately represented at the sale. No dispute is present concerning the administration of her trust nor her rights as between her and the trustee.
The ultimate issue as to how to distribute the proceeds of the voluntary sale entered into by the holders of the life estates and the remainderman is a novel question in New Jersey. The only case cited by both defendants, In re Dowe, 68 N.J. Eq. 11 (Ch. 1904), stands for the proposition that the proceeds from the sale of lands are substituted for the lands, and that the income from such fund is payable to the life tenant. That decision does not control the disposition of the case sub judice.
Dowe was based on the predecessor of N.J.S. 3A:34-1 et seq. That case involved a sale of lands pursuant to court order. N.J.S. 3A:34-1 involves a situation where any future or contingent interest in real estate, or in the proceeds which may arise from the sale thereof, is wholly or in part limited over to mental incompetents. The Superior Court may, if satisfied that a sale is in the best interests of all concerned, order the real estate sold. N.J.S. 3A:34-5 and 6 provide for the investment of the proceeds and the payment of the income therefrom to those who would have been entitled to the particular estate therein.
The pleadings and briefs clearly show that this was a voluntary sale and not a judicial sale. The parties in the present action negotiated with the buyer and arrived at an agreeable price.
Exhaustive research has failed to disclose any previous decisions in this jurisdiction involving the question to be determined here, i.e., whether the holder of a vested remainder interest can compel the holder of a possessory life estate and the holder of a contingent life estate to accept a gross sum in lieu of a life income from the proceeds of a voluntary sale of the premises in question.
Plaintiff cites Foster v. Hilliard, 1 Story 77, 9 Fed. Cas. 549, Fed. Cas. No. 4,972 (D. Mass. Cir. 1840), as the leading *445 case involving a similar situation to the one here presented. There the life tenant, with the assent of the guardian of the minors (holders of the remainder interest), sold the land and received a part of the purchase money and then died, and the residue of the purchase price was received by the life tenant's executors. The minors came of age and claimed the whole of the purchase money from the executors. On behalf of the remaindermen, it was contended that the purchase money should be treated as a mere substitute for the land sold; that the life tenant was entitled to the income thereof during his life, and that the whole principal now belonged to them. In the alternative, it was contended that if they were not entitled to the whole amount, the money should be apportioned according to the actual value of the life estate as disclosed by the facts  the life tenant having died shortly after the sale.
At the sale there was no agreement as to how to divide the proceeds. The court stated the natural conclusion that the parties share the purchase money according to their respective interests. The executors contended that they were entitled to hold so much of the purchase money as represented the life tenant's interest in the property as calculated by the common annuity and life tables at the time of sale.
The court in Foster ruled in accordance with the contentions of the executors of the life tenant. There are several basic factual distinctions between that case and this one. Here, the life tenants seek to have the proceeds invested and the income of such a fund paid to them for the duration of their lives, and upon the death of the survivor the fund to be distributed to the remaindermen. In Foster v. Hilliard the contentions of the life tenant were exactly the reverse.
Exhaustive research by plaintiff (as indicated by its brief) and the court has failed to find a case where the life tenant has been compelled to accept a gross sum in a similar factual pattern.
The existing law in this area is accurately stated in 33 Am. Jur., Life Estates, Remainders and Reversions, § 275, page 768.
*446 "The rule of commutation, at least as applied to nonjudicial sales, seems to be the rule of reason, that the owner of a life estate upon the sale thereof, in like manner as the owner of an interest in fee upon the sale thereof, is entitled to, and perhaps should be compelled to take, the consideration received therefor." (Emphasis supplied)
This statement also appears in 102 A.L.R. 969, at page 971.
In some jurisdictions the principle of commutation is followed, where equitable under the circumstances. 102 A.L.R. 970 at page 988. In Keniston v. Gorrell, 74 N.H. 53, 64 A. 1101 (Sup. Ct. 1906) plaintiff, who was the life tenant, claimed to be entitled to a gross sum payment according to the present worth of her interest computed from mortality tables. The court held that the parties contemplated an equitable division of the proceeds according to the value of their respective interests. It said:
"The division might be made in either method claimed by the parties. As a mathematical proposition, there is no difference between the two. The fact that one method has been found more equitable under the circumstances presents no question of law." (Citations omitted, 64 A., at p. 1102)
It is the opinion of this court that the proceeds of the sale should be invested and the income paid to defendant Selwyn H. Osborne for the duration of his life. Upon his death, and if Doris D. Osborne be living, the income is to be paid to the Trust Company of Morris County as trustee for Doris. Upon the death of Doris, the funds shall become payable to the Mt. Freedom Presbyterian Church, a New Jersey religious corporation.
Although the court is not compelled to follow any of the decisions discussed above, their rationale is most helpful. The court feels that its decision is the most equitable under the circumstances. Defendant Selwyn H. Osborne was the stepson of the deceased Anna Caroline Drake Osborne. Under the third paragraph of her will Selwyn was devised a life estate in the "Upper Farm" (part of which was sold for the right of way to the power company) "on the understanding that my Daughter, Doris D. Osborne, may enjoy with her half-brother, *447 said Selwyn H. Osborne, said `Upper Farm' including my dwelling house and said adjacent and contiguous lands, in the same manner as she now does with me, which matter is entirely known to said Stepson, Selwyn H. Osborne." Selwyn had the express duty to keep the dwelling in repair, keep proper insurance and pay the taxes on "Upper Farm" and the adjacent and contiguous lands out of his own funds. In the event that Selwyn should predecease Doris, the trustee was directed to rent the "Upper Farm" and use the net income towards the support, maintenance and medical care of Doris D. Osborne.
Paragraph four of the will provides that the residue of the estate be invested by the trustee, the income to be used for the support, maintenance and medical care of Doris D. Osborne for her natural life.
From an examination of the entire will, it is manifest that the prime concern of the deceased was to provide for her stepson who is now 62 years of age, and her daughter, now 45, for the rest of their natural lives. The method chosen by the deceased to provide for Selwyn and Doris is the income received from renting the "Upper Farm." Part of the "Upper Farm" having been sold, the proceeds should stand in its place, and the income from the fund in the place of the rents.
Judgment may be presented in accordance with this opinion.